STATE of Wisconsin, Plaintiff-Respondent,

v.

Pervan Zeb SMITH, Defendant-Appellant-
Petitioner.

Supreme Court

*Nos. 82–377–CR, 82–891–CR, 84–1245–CR. Argued April 2,
1986.—Decided June 24, 1986.*

(Also reported in 388 N.W.2d 601.)

For the defendant-appellant-petitioner there were briefs by *Micaela Levine* and *Calvey, Mitchell & Baxter, S.C.,* Milwaukee, and oral argument by *Ms. Levine.*

For the plaintiff-respondent the cause was argued by *Sally L. Wellman,* assistant attorney general, with

whom on the brief was *Bronson C. La Follette,* attorney general.

LOUIS J. CECI, J.   This is a review of a decision of the court of appeals[1] affirming orders of the circuit court for Milwaukee county, Frederick P. Kessler, Clarence R. Parrish, and Gary A. Gerlach, circuit judges, which denied a number of motions raised prior to, during, and after trial. We reverse the decision of the court of appeals and remand to the circuit court for vacation of the judgment of conviction and for further proceedings consistent with this opinion.

The issues raised on appeal by the defendant, Pervan Zeb Smith, relate to several alleged errors in both the guilt phase of a bifurcated trial and the post-conviction proceeding. Because we find that the warrantless entry of defendant's residence and subsequent arrest was made without exigent circumstances and, therefore, was unlawful, we need not reach the other grounds for Smith's appeal. The trial court erred in not suppressing the fruit of the unlawful arrest at Smith's jury trial. We therefore remand this case for a new trial without the tainted evidence. In the process, we withdraw language from our line of cases stating that an unlawful arrest deprives the trial court of personal jurisdiction over the defendant. *See, e.g., State v. Monje,* 109 Wis. 2d 138, 325 N.W.2d 695 (1982).

Following a jury trial in 1980, Smith was found guilty of the first-degree murder and battery of Helen Lows. Smith waived a jury trial on the question of his mental responsibility for the crime. Section 971.175, Stats. The court found him not guilty by reason of men-

[1] *State v. Smith,* 125 Wis. 2d 111, 370 N.W.2d 827 (Ct. App. 1985).

tal disease or defect and committed him to the department of health and social services, Central State Hospital.[2]

The following facts of record are pertinent to this review. On May 5, 1979, Helen Lows was found dead in her home. The police began their investigation by focusing their attention on a battery complaint Lows had made on April 15, 1979. By tracing a laundry ticket in a jacket found at Lows' residence after the battery, the police were able to identify the owner of the ticket, Smith, and the location of his residence. This part of the investigation was completed at the police station

[2] The procedural history in greater detail is as follows: In February, 1982, defendant filed a postconviction motion for a new trial. Judge Clarence Parrish held under *Hoppenrath v. State,* 97 Wis. 2d 449, 293 N.W.2d 910 (1980), that the guilt phase of the trial could not be reviewed. On review of that issue in *State v. Smith,* 113 Wis. 2d 497, 335 N.W.2d 376 (1983), this court overruled *Hoppenrath,* vacated Judge Parrish's order denying defendant's motion for a new trial, and remanded for further proceedings before Judge Kessler. The trial court then ruled on a number of issues raised by defendant prior to and during the trial. Judge Kessler denied defendant's motion to dismiss the case and suppress evidence based on the alleged illegality of the arrest, denied defendant's motion to suppress the confession, and instructed the jury that a defense witness was unavailable because of incompetency. We review Judge Kessler's ruling on defendant's motion to dismiss.

In May of 1984, defendant moved for a new trial on the basis of other issues not considered by the trial court. These issues included whether a new trial should be granted based on newly discovered evidence, whether a new trial should be granted based on the state's nondisclosure of potentially exculpatory evidence, and whether a new trial should be granted in the interest of justice. Circuit Judge Garry Gerlach, who subsequently handled the case, denied defendant's motions. The court of appeals affirmed the circuit court orders of Judges Kessler, Parrish, and Gerlach.

by 6:00 p.m. May 7, when the police checked the address supplied by the laundry against their files on Smith, which indicated the same address.

The police then went to that address and found that Smith had recently moved. They were directed by neighbors to a nearby restaurant, where they learned the location of Smith's new apartment. The investigating officers and a back-up squad (a total of seven police) then decided to go to that location and make the arrest.

At Smith's apartment the police found the door ajar and heard loud snoring coming from within. They banged loudly on the door, could not arouse Smith, and proceeded to enter. They found Smith asleep in his bedroom and handcuffed him. He then awoke.

The police then arrested Smith for battery. After interrogation several hours after the arrest, Smith confessed to both the battery and murder of Helen Lows. Smith had been kept in a controlled custodial situation from the point of arrest until his confession.

When asked during the *Miranda-Goodchild* pretrial hearing whether there were any circumstances preventing the police officers from getting a warrant between the time they verified Smith's identity and address at 6:00 p.m. and his arrest three hours later, one of the arresting officers said that there were none; "We had probable cause to arrest him for the battery so we didn't apply for the warrant at that time."

■

We turn to the applicable law on warrantless entry into the home to effect an arrest. The United States Supreme Court has held, and this court has followed its mandates, that, although probable cause for arrest is present, absent a showing of exigent circumstances or consent, a warrantless entry into the home

for purposes of search, seizure, and arrest violates a person's right against unlawful searches and seizures in the home. *Steagald v. United States,* 451 U.S. 204 (1981); *Payton v. New York,* 445 U.S. 573 (1980); *State v. Welsh,* 108 Wis. 2d 319, 321 N.W.2d 245 (1982), *vacated and remanded* 466 U.S. 740 (1984); *Laasch v. State,* 84 Wis. 2d 587, 593, 267 N.W.2d 278 (1978).[3]

■ The fourth amendment of the United States Constitution and art. I, sec. 11 of the Wisconsin Constitution guarantee "[t]he right of the people to be secure in their persons, houses, papers, and effects. . . ." This court has applied this provision to warrantless arrests in the home. *E.g., Laasch,* 84 Wis. 2d at 595. By announcing that "[a]n arrest . . . is quintessentially a seizure," we have said that the same constitutional protec-

---

[3] The United States Constitution and the Wisconsin Constitution reflect a sensitivity for the privacy interests of citizens in the sanctity of their homes, such that warrantless entry into the home to make an arrest absent consent or exigent circumstances is unconstitutional. The fourth amendment of the United States Constitution provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Article 1, Sec. 11, Wis. Const., provides:

> "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

tions which accrue in a search context should apply to arrests in the home. *Id.* at 595.

> " '[T]he notion that the warrantless entry of a man's house in order to arrest him on probable cause is *per se* legitimate is in fundamental conflict with the basic principle of Fourth Amendment law that searches and seizures inside a man's house without warrant are *per se* unreasonable in the absence of some one of a number of well defined "exigent circumstances." ' " *Id.* (quoting *Coolidge v. New Hampshire,* 403 U.S. 443, 477–78 (1971)).

Although warrantless arrest in the home is deemed to be presumptively unreasonable, our laws recognize that, under special circumstances, it would be unrealistic and contrary to public policy to bar law enforcement officials at the doorstep. Accordingly, the doctrine of exigent circumstances has developed to allow law enforcement officials to cross the threshold to effect an arrest in narrowly defined circumstances. Warrantless entry is permissible only where there is urgent need to do so, coupled with insufficient time to secure a warrant. If these circumstances arise, the individual's substantial right of privacy in the home must reasonably yield to the compelling public need to permit effective law enforcement.

■

The burden to justify warrantless in-home entry is on the state. The state must prove that there was probable cause to arrest and, in addition, exigent circumstances that could not brook the delay incident to obtaining a warrant. *See, Laasch,* 84 Wis. 2d at 596 (citing *Dorman v. United States,* 435 F.2d 385, 390–92 (D.C. Cir. 1970)); *Welsh,* 108 Wis. 2d at 329, 336.

This court reviewed what constitutes exigent circumstances in *Laasch* and in *Welsh*. This court, following the federal rule of exigent circumstances, *see, e.g., Steagald,* 451 U.S. at 211–12; *Laasch,* 84 Wis. 2d at 595–96, has identified four factors which, when measured against the time needed to obtain a warrant, would constitute the exigent circumstances required for a warrantless entry: (1) An arrest made in "hot pursuit," (2) a threat to safety of a suspect or others, (3) a risk that evidence would be destroyed, and (4) a likelihood that the suspect would flee. *See, Laasch,* 84 Wis. 2d at 592. We recommended in *Welsh,* consistent with *Brown v. Texas,* 443 U.S. 47, 50–51 (1979), that a review of exigent circumstances be directed by a flexible test of reasonableness under the totality of the circumstances. *Welsh,* 108 Wis. 2d at 328, 329.

We accept the suggestions of Professor Wayne La-Fave, a well-known scholar of the fourth amendment, that any rule of exigent circumstances should be one which can be easily understood and readily applied by well-intentioned and reasonably competent police officers. W. LaFave, Search and Seizure, Sec. 6.1 at 390, n. 76 (1978). The need to clarify the legal requirements for a warrantless entry with probable cause appears particularly important in light of the facts in this case. The record reveals that the two officers in charge of this investigation, who had a cumulative tenure of thirty-five years with the Milwaukee Police Department, did not make a well-considered decision to forego obtaining a warrant, but simply proceeded in the belief that probable cause was sufficient to permit this warrantless entry regardless of whether exigent circumstances existed. Despite our efforts to define exigent

circumstances in the past, it would appear that the requirements for warrantless entry into the home—probable cause plus exigent circumstances—may not have been clearly communicated to our law enforcement officials.

Just as the warrant requirement is intended to keep police practice within constitutional limits, so a narrow exception to that requirement, exigent circumstances, should be clearly delineated to achieve the same objective.

Drawing on our prior decisions, we conclude that the basic test should be an objective one: Whether a police officer under the circumstances known to the officer at the time reasonably believes that delay in procuring a warrant would gravely endanger life or risk destruction of evidence or greatly enhance the likelihood of the suspect's escape. Application of this test to the facts before us is straightforward.

The circuit court found probable cause for arrest on the misdemeanor battery which occurred three weeks before the arrest, but no probable cause for the arrest for murder. By linking the battery with the subsequent murder, the court nevertheless held that exigent circumstances were present for the misdemeanor arrest. The court found that the police could believe that Smith might be armed, given the use in the murder of an unidentified implement (imminent danger to life), and that the police feared that the news of their investigation, which was begun and completed on the same day as the arrest, might tip off Smith, who would then flee (risk of escape). Finally, the court was of the opinion that a warrant would be difficult to obtain in the evening (undue delay in procuring a warrant). On

the facts of this case, we think these findings are clearly erroneous.

We analyze these findings of the trial court in light of those elements that may trigger the exigent circumstances exception to the warrant requirement: Undue delay in procuring a warrant in conjunction with danger to life, risk of evidence destruction, or likelihood of escape.

The concern that there would be undue delay because a warrant would be difficult to obtain on the evening in question has not been demonstrated in the record. According to testimony offered by the state's witness, an assistant district attorney for Milwaukee county, of which the court took judicial notice at the preliminary hearing, district attorneys are on call for the police after working hours, and normally they can be reached. During the hours of this investigation until the time of the arrest of Smith at 9:00 p.m., Milwaukee county had administratively designated duty judges who were available for the issuance of warrants.[4]

Furthermore, there were no special risks posed by this investigation which required the police to act immediately and to forego getting a warrant. Time was not of the essence. The police were not in "hot pursuit" of the suspect. The United States Supreme Court, in

---

[4] Rule No. 243 of the Rules for the First Judicial District, State of Wisconsin, in effect at the time of this arrest, stated in pertinent part as follows:

"The Chief Judge shall designate one judge each week who shall serve from 8:00 a.m. Monday to 8:00 a.m. the following Monday to:
" . . .
"(2) Set bail and hear search warrant requests between 5:00 p.m. and 11:00 p.m. and emergency search warrant and bail requests between 11:00 p.m. and 8:00 a.m."

reviewing the "hot pursuit" exigency justifying a warrantless entry, has defined the circumstance as one where there is an "immediate or continuous pursuit of [a suspect] from the scene of a crime." *Welsh v. Wisconsin,* 466 U.S. at 753. There was no continuity of pursuit posed by the present case, although the investigation might have been continuous. The underlying offense, battery, for which there was probable cause to arrest, occurred nearly three weeks earlier.

This was also not the type of ongoing investigation for which Professor LaFave recommends a presumption favoring warrantless arrests.[5] He describes this kind of investigation as one where quick decision-making in the field makes the probabilities high that it is not feasible for the police to delay an arrest to obtain a warrant. W. LaFave, *Search and Seizure,* sec. 6.1 at 392.

Here, we have an investigation which identified Smith and his former address three hours before the arrest while the police were at the station. To obtain a warrant at that point would not have required the police to cut their investigation short. Moreover, the police testified to a deliberate plan to go to Smith's residence and arrest him. This is a situation where a warrant should have been obtained.

---

[5] We recognize that, when probable cause matures in the field, there may be a greater likelihood that exigencies could arise which would make obtaining a warrant unreasonable. Our test nevertheless requires the police to have objective reasons for foregoing the warrant process. *See, e.g.,* Note, *"Balancing on the Brink of the Chasm:" The Exigent Circumstances Exception and the Fourth Amendment's Categorical Balancing Test in State v. Welsh,* 1983 Wis. L. Rev. 1023, 1073–74, n. 237.

"A 'planned' arrest is one which is made after a criminal investigation has been fully completed at another location and the police make a deliberate decision to go to a certain place, either the arrestee's home or some other premises where he is believed to be, in order to take him into custody. . . . Courts have understandably been reluctant to accept police claims of exigent circumstances in these situations, for it ordinarily appears that whatever exigencies thereafter arose were foreseeable at the time the arrest decision was made, when a warrant could have readily been obtained." LaFave, *Search and Seizure,* sec. 6.1 at 391.

■ Smith and his address were identified as of 6:00 p.m. when the police were at the police station. The officers offer no justification for not obtaining a warrant other than the legally incorrect belief that probable cause to arrest for the battery was enough to justify a warrantless entry into a home.

Exigent circumstances may, in some circumstances, arise because of the danger to life if the arrest is not made immediately. We recognize that this investigation and subsequent arrest was impelled by police suspicion that the battery of April 15 was linked to the later murder of the same victim on May 5. Mere suspicion of a connection between these two offenses alone is not sufficient to overcome the warrant requirement afforded by the fourth amendment of the U. S. Constitution and by art I, sec. 11 of the Wisconsin Constitution. Only where a delay in the investigation would gravely endanger lives does this factor in the exigency formulation come into play. The facts of this case do not present such a situation.

Smith was asleep when the police arrived at his apartment. They could hear him snoring from the hallway and could not arouse him with loud banging on the door. This should have dispelled any fears they might have had that the safety of others was in any way compromised.

There was nothing in the record to show that immediate arrest was necessary to obviate the risk of destruction of evidence. That factor allegedly justifying exigent circumstances was totally absent.

Nor do we see any supportable inference that there was a likelihood that Smith would escape. The police made inquiries on the day of the arrest about Smith's identity and whereabouts. One officer testified that they were concerned that Smith might leave because they were not sure whether Smith would be at the address provided by a local restauranteur. They had followed up two other address leads and had not found him.

■ The officers' uncertainty regarding Smith's whereabouts is not enough to justify a warrantless entry into his home. The police cannot themselves create the exigency—risk of escape—by merely conducting an investigation. If that theory were correct, then any time an investigation is conducted, the police obviate the need for a warrant. Such a broad construction of this exigency does not recognize the urgent-need rationale underlying this exception to the warrant requirement. This exigency must arise by clear evidence of a likelihood that the suspect would flee.

We note, additionally, that the police eventually went to Smith's apartment with three squads, a total of seven police officers. The police found Smith asleep.

It was conceded at oral argument that, with the personnel available, they could have staked out the premises, covering all exits, and then procured a warrant.

"When an officer undertakes to act as his own magistrate, he ought to be in a position to justify it by pointing to some real immediate and serious consequences if he postponed action to get a warrant." *Welsh v. Wisconsin,* 466 U.S. at 751 (citing *McDonald v. United States,* 335 U.S. 451, 460 (1948) (Jackson, J., concurring)). We find no such justification here, and none is offered in the record. Consequently, we hold that this arrest was an unreasonable seizure in violation of the protections afforded under the fourth amendment of the Federal Constitution and under art. I, sec. 11, Wis. Const. As we stated in *Laasch,* 84 Wis. 2d at 595, we believe the result reached here is in accord with decisions of the United States Supreme Court and this court. Thus, this court continues to align its search and seizure analysis of art. I, sec. 11 with the federal decisions construing the fourth amendment.

Having decided that the arrest of Smith was unlawful as violative of the federal and state constitutions, we are urged by the defendant to dismiss the complaint, presumably based on this court's prior holdings that an illegal arrest deprives the trial court of personal jurisdiction over a defendant. *See, e.g., State v. Monje,* 109 Wis. 2d 138, 325 N.W.2d 695 (1982); *Walberg v. State,* 73 Wis. 2d 448, 243 N.W.2d 190 (1976); *State ex rel. La Follette v. Raskin,* 30 Wis. 2d 39, 139 N.W.2d 667 (1966); *State ex rel. La Follette v. Moser,* 30 Wis. 2d 56, 139 N.W.2d 632 (1966). In *Walberg,* we said that "personal jurisdiction is dependent upon the defendant's physical presence before the court pursuant

to a properly issued warrant, a lawful arrest or a voluntary appearance." 73 Wis. 2d at 458. Under this rule, the complaint charging Smith with battery and murder would be dismissed because Smith did not appear before the trial court pursuant to a valid arrest.

This court is now of the opinion, however, that the better rule to follow is that a defendant appearing before a trial court pursuant to an unlawful arrest presents no barrier to that court's obtaining jurisdiction over the defendant. This is in keeping with the generally recognized rule that,

> ". . . if a defendant is physically before the court on an accusatory pleading, . . . the invalidity of the original arrest is immaterial, even though seasonably raised, as regards the jurisdiction of the court to proceed with the case." 21 Am. Jur. 2d, *Criminal Law,* § 340 (1981).

*See also, State ex rel. Wojtycski v. Hanley,* 248 Wis. 108, 113, 20 N.W.2d 719 (1945).

A review of Supreme Court decisions indicates that our prior treatment of an illegal arrest as a jurisdictional defect is not a constitutional mandate. A defendant cannot claim immunity from prosecution "simply because his appearance in court was precipitated by an unlawful arrest," nor does an illegal arrest serve as a defense to a valid conviction. *United States v. Crews,* 445 U.S. 463, 474 (1980). Due process of law is satisfied when one present in court is convicted of a crime after having notice of the charges against him and after a trial satisfying constitutional procedural safeguards. *Frisbie v. Collins,* 342 U.S. 519, 522 (1952). *See also, Gerstein v. Pugh,* 420 U.S. 103, 119 (1975); *Stallings v. Splain,* 253 U.S. 339, 343 (1920); *Kelly v. Griffin,* 241 U.S. 6, 13 (1916); *Ker v. Illinois,* 119 U.S.

436 (1886). This court also has recognized that an illegal arrest is not a constitutional barrier to prosecution. *Monje,* 109 Wis. 2d at 143 (an illegal arrest does not deprive a court of jurisdiction on any constitutional ground); *Walberg,* 73 Wis. 2d at 457.

Despite the lack of a constitutional barrier to prosecution pursuant to an unlawful arrest, we have heretofore retained the rule that a court obtains personal jurisdiction only when the defendant's presence before that court is pursuant to a properly issued warrant, a lawful arrest, or a voluntary appearance. The purpose of the rule was "to assure that arrest warrants will be issued only on probable cause." *Walberg,* 73 Wis. 2d at 459. We based this conclusion on a statement in *State ex rel. La Follette v. Raskin,* 30 Wis. 2d at 47, specifically, that permitting a subsequent probable cause determination to validate a prosecution despite an illegal arrest would wrongfully encourage the use of warrants not initially based on probable cause. The jurisdictional implication of an illegal arrest is thus a court-created rule which was intended to effectuate fourth amendment protection.

After examining the purpose of the illegal arrest/personal jurisdiction rule, this court questions whether treating an illegal arrest as a jurisdictional defect provides substantive protection against unreasonable search and seizure. The rule merely elevates form over substance; it will not deter illegal arrests *per se.* The state may simply rearrest a defendant after lack of jurisdiction has been found, and thereby afford a court proper personal jurisdiction over the defendant. In *Kelly,* 241 U.S. at 13, the Supreme Court noted the emptiness of ritually requiring rearrest:

"But merely to be declared free in a room with the marshal standing at the door having another warrant in his hand would be an empty form. We are of opinion that in the circumstances of this case . . . the omission of a formal act of release and a subsequent arrest . . . furnishes no ground for discharging the appellant upon *habeas corpus.*"

Thus, we conclude that the fourth amendment concerns underlying this court's jurisdictional treatment of illegal arrests are not substantively promoted by the old rule.

This jurisdiction's statutory scheme sets forth the importance of the complaint in a court's obtaining personal jurisdiction over a defendant. The complaint is the statutory procedure for acquiring personal jurisdiction over the defendant. Section 967.05(1), Stats., provides that a prosecution may be commenced by filing a complaint or an indictment. Section 968.03(1) states that the circuit court should dismiss a complaint if it does not sufficiently establish probable cause. This court has acknowledged the role of the complaint in effecting the personal jurisdiction of a circuit court. In *State ex rel. Cullen v. Ceci,* 45 Wis. 2d 432, 442–43, 173 N.W.2d 175 (1970), we stated that,

"While [a complaint's] purpose is no longer to authorize the seizure of the person of the defendant, it is the jurisdictional requirement for holding a defendant for a preliminary examination or other proceedings."

The jurisdictional importance of the complaint is evident both when it is the basis for an arrest warrant and when an arrest precedes the filing of the complaint. Section 968.04(1), Stats., provides that a circuit court shall issue an arrest warrant or a summons when

the complaint establishes probable cause. Section 968.04(1)(a) further provides that "[w]hen an accused has been arrested without a warrant and is in custody or appears voluntarily before a judge, no warrant shall be issued and the complaint shall be filed forthwith with a judge." Section 970.02(1)(a) then provides that the judge at the initial appearance shall inform the defendant of the charge against him and shall furnish the defendant with a copy of the complaint. This statutory scheme indicates that the essential element of personal jurisdiction in a criminal action is the sufficiency of the complaint, rather than the process by which the defendant's presence in court is secured.

The critical relationship between the complaint and personal jurisdiction is indicated by the constitutional purpose for personal jurisdiction. Personal jurisdiction assures that the defendant has a sufficient relationship to the jurisdiction exercising authority and that the defendant has notice of the charges. The notice function is accomplished by requiring a complaint to include the essential facts constituting the offense charged, sec. 968.01, and the possible penalties for the offenses set forth therein, sec. 970.02(1)(a). The requirement of a sufficient relationship to the state is satisfied by sec. 939.03. That statute provides:

> "**939.03 Jurisdiction of state over crime.** (1) A person is subject to prosecution and punishment under the law of this state if:
>
> " (a) He commits a crime, any of the constituent elements of which takes place in this state; or
>
> " (b) While out of this state, he aids and bets, conspires with, or advises, incites, commands, or solicits another to commit a crime in this state; or

" (c) While out of this state, he does an act with intent that it cause in this state a consequence set forth in a section defining a crime; or

" (d) While out of this state, he steals and subsequently brings any of the stolen property into this state."

That sec. 939.03 relates to personal jurisdiction is clearly indicated when contrasted with sec. 753.03, which defines subject matter jurisdiction of circuit courts, which includes the power to hear criminal cases. *Mack v. State,* 93 Wis. 2d 287, 294, 286 N.W.2d 563 (1980). Thus, sec. 939.03 and sec. 967.05(1), which requires a complaint to commence a criminal prosecution, satisfy the purpose for requiring personal jurisdiction. There is no logical reason related to personal jurisdiction concepts to also treat an illegal arrest as a jurisdictional defect.

■ We conclude that treating an illegal arrest as a jurisdictional defect does not serve a substantive fourth amendment function and that the rule is not legitimately related to personal jurisdiction assurances. We therefore withdraw language from our prior decisions indicating that an unlawful arrest deprives a court of personal jurisdiction over the defendant. We instead protect the fourth amendment values jeopardized by an illegal arrest through use of the exclusionary rule. We follow the federal line of cases holding that "[t]he exclusionary principle of *Wong Sun* and *Silverthorne Lumber Co.* delimits what proof the government may offer against the accused at trial, [thereby] closing the courtroom door to evidence secured by official lawlessness." *Crews,* 445 U.S. at 474. Conversely, we define a

court's personal jurisdiction by reference to the statutory requirements described above.

Having concluded that Smith's arrest was unlawful, we next look to determine whether there existed any fruit of the illegal arrest. *See, Taylor v. Alabama,* 457 U.S. 687 (1982); *Dunaway v. New York,* 442 U.S. 200 (1979). In this case, Smith urges us to consider his confession to the Lows murder as fruit of the illegal arrest. If a confession is obtained through exploitation of the illegality of an arrest, the confession must be excluded from trial. *State v. Flynn,* 92 Wis. 2d 427, 441, 285 N.W.2d 710 (1979).

The general rule of inadmissibility is modified where "intervening events break the causal connection between the illegal arrest and the confession so that the confession" is an act of free will. An act of free will purges the primary taint. *Taylor,* 457 U.S. at 690. Factors to be considered in determining whether the taint of the illegal arrest has been purged from the confession include "[t]he temporal proximity of the arrest and the confession, the presence of intervening circumstances, . . . and, particularly, the purpose and flagrancy of the official misconduct." *Id.* (quoting *Brown v. Illinois,* 422 U.S. 590, 603–04 (1975)). The state bears the burden of showing that the confession is admissible. *Taylor,* 457 U.S. at 690.

Our analysis of the causal connection between the illegal arrest and the confession is truncated due to the state's confession that, if the arrest is deemed to be illegal, then the confession obtained from the defendant should have been suppressed under the facts of this case. We note that the record indicates that Smith con-

fessed to the murder within two hours after the police began to question him. The interrogation of Smith commenced shortly after his arrest. He was kept in a controlled custodial situation from the point of arrest until he confessed to the murder. Although the record indicates no threats or physical abuse of the defendant during the questioning, the record similarly indicates insufficient evidence to break the causal connection between Smith's illegal arrest and the confession.

The record reflects that Smith's confession of the Lows murder and battery was put before the jury during Smith's trial for first-degree murder and battery, which commenced on March 11, 1980. The jury returned a verdict of guilty on March 21, 1980. Having determined that the confession was the fruit of an illegal arrest, we conclude that Smith's confession was erroneously put before the jury. We next consider whether the error was prejudicial to Smith.

Where error is present, the reviewing court must set aside the verdict unless it is sure that the error did not influence the jury or had such slight effect as to be *de minimis. State v. Zelenka,* 130 Wis. 2d 34, 48, 387 N.W.2d 55; *State v. Dyess,* 124 Wis. 2d 525, 541–42, 370 N.W.2d 222 (1985). The test for harmless versus prejudicial error is "whether there is a reasonable possibility that the error contributed to the conviction." *Dyess,* 124 Wis. 2d at 543. The focus of this test is whether the error undermines confidence in the outcome of the case. *State v. Fishnick,* 127 Wis. 2d 247, 265, 378 N.W.2d 272 (1985); *see also, Dyess,* 124 Wis. 2d at 545.

There can be no doubt that the admission of testimony concerning Smith's confession was prejudicial

error. A review of the trial transcript demonstrates that there is, at the very least, a reasonable possibility that Smith's confession contributed to the guilty verdict and his subsequent conviction. Our confidence in the outcome of the verdict and judgment of conviction is severely undermined because of the evidence of Smith's confession to the battery and the murder.

The trial transcript indicates that an important part of the prosecution's case dealt with Smith's confession. The prosecution elicited testimony from two of the four officers who were present during the Smith interrogation leading to the confession. One of the officers expressly referred to Smith's confessing to the battery and murder. Another officer who interviewed Smith after the initial interrogation testified that Smith confessed to the murder. A police "show up" report was admitted into evidence. The "show up" report was a handwritten document authored by the interrogating police officers which included statements that Smith had confessed to the battery and murder.

Our review of the transcript indicates that the confession was the single most incriminating item of evidence offered against Smith. We have no doubt that the confession contributed to the verdict and conviction. Because Smith was prejudiced by its admission at trial, we must order that the conviction of battery and first-degree murder be set aside. If Smith is retried for these offenses, the confession must be suppressed as tainted fruit of an illegal arrest.

The defendant argues in his brief that "all incriminating evidence which is the result of" the illegal arrest should be suppressed on retrial, but he does not express what other tainted evidence resulted from the

arrest. Nevertheless, the trial court on retrial must suppress the confession and any other evidence which is fruit of Smith's illegal arrest.

*By the Court.*—Decision of the court of appeals reversed; cause remanded to the circuit court for vacation of judgment and further proceedings consistent with this opinion.

SHIRLEY S. ABRAHAMSON, J. *(concurring)*. The court today overturns long-standing precedent and diminishes the people's protection from illegal arrests in their homes.

In *Laasch v. State,* 84 Wis. 2d 587, 267 N.W.2d 278 (1978), this court held that a warrantless arrest of a person in his or her own home absent exigent circumstances was unlawful and would deprive the trial court of personal jurisdiction over the defendant. In *State v. Monje,* 109 Wis. 2d 138, 147, 325 N.W.2d 695 ((1982), this court said that the *Laasch* ruling was justified to protect the special dignities and sanctity of one's home.

Today the court concludes that the warrantless arrest in the home was illegal, majority opinion at page 224, but "withdraws" prior case language that an illegal warrantless arrest in the home deprives the court of personal jurisdiction over the defendant. Majority opinion at page 224. An illegal warrantless arrest in the home now gives a court personal jurisdiction over the defendant.

By basing the court's jurisdiction on an illegal warrantless arrest of the defendant in his home, the court legitimizes the illegal conduct which produced the arrest. Courts should not be parties to invasions of the constitutional rights of citizens.

While I join the court in holding that the warrantless arrest was illegal and that the conviction must be reversed, I do not join the court in overruling our past cases which say that a court does not have personal jurisdiction of a private citizen who was rendered a defendant in court through an illegal warrantless arrest in the home.

I am authorized to state that CHIEF JUSTICE NATHAN S. HEFFERNAN joins in this concurrence.