STATE of Wisconsin, Plaintiff-Respondent,†

v.

Daniel RODRIGUEZ, Defendant-Appellant.

Court of Appeals

*No. 00–2546–CR. Submitted on briefs June 5, 2001.—Decided
August 21, 2001.*

2001 WI App 206

(Also reported in 634 N.W.2d 844.)

† Petition to review denied 10-23-01.

735

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Diana M. Felsmann*, assistant state public defender of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general and *Lara M. Herman*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

¶ 1. WEDEMEYER, P.J. Daniel Rodriguez appeals from a judgment entered after he pled guilty to possession of a controlled substance (marijuana) with intent to deliver, contrary to

WIS. STAT. § 961.41(1m)(h)1 (1999–2000).[1] Rodriguez claims that the police violated his Fourth Amendment rights when they entered his mother's home without a warrant or probable cause. Therefore, he asks this court to reverse the trial court's ruling denying his motion for suppression. Because the State failed to overcome the presumption that the entry into the home was unreasonable per se, we reverse the judgment and remand with directions to the trial court to enter an order granting the suppression motion.

## I. BACKGROUND

¶ 2. On October 25, 1999, at 4:30 p.m., Rodriguez exited his home and went for a bicycle ride. He rode to his mother's home to check on her. Before returning home, he stopped to talk to his brother-in-law, who was outside his mother's residence. Meanwhile, Milwaukee Police Officers Johnny Santiago and Aaron Kohlhepp were patrolling a "hot spot" in an unmarked police car. Santiago stated that a "hot spot" is an area about which the police have received complaints regarding "a lot of traffic going into and from a particular house" of people the residents do not recognize.

¶ 3. The officers noticed Rodriguez riding his bicycle. The officers observed the "hot spot" for approximately five minutes and then circled the block. When the officers returned, they saw Rodriguez riding his bike back and forth in the alley adjoining a residential building. The officers drove toward Rodriguez, hoping to engage him in a voluntary conversation. Officer Kohlhepp rolled down his window and said, "What's up?" Rodriguez dropped his bicycle and ran into his

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

mother's home. Officer Kohlhepp ran after him, entered the home, and chased him through the kitchen. Rodriguez attempted to close the basement door, but Officer Kohlhepp stuck his arm in the door to prevent it from closing. Rodriguez fled down the basement stairs with his hand in his coat pocket. Officer Kohlhepp saw Rodriguez remove a plastic baggie from his pocket and throw it. The bag contained marijuana.

¶ 4. Rodriguez was charged with possession with intent to deliver. He filed a motion to suppress the evidence, claiming that the police lacked probable cause to enter the home without a warrant. The trial court denied the motion. Rodriguez entered a guilty plea. He now appeals.

## II. DISCUSSION

¶ 5. The issue in this case is whether the police officer's warrantless entry into the home was constitutional. The trial court ruled that the flight from the officer constituted reasonable suspicion. The trial court found that the warrantless entry was justified by the flight, coupled with a belief that exigent circumstances—that is, destruction of evidence—were present. We disagree.

¶ 6. In reviewing the suppression order, we are presented with a mixed question of fact and law. *State v. Hughes*, 2000 WI 24, ¶ 15, 233 Wis. 2d 280, 607 N.W.2d 621, *cert. denied,* 531 U.S. 856 (2000). We review the trial court's findings of fact under the clearly erroneous standard. *Id.* Whether the Constitution was violated, however, is a question of law which we review independently. *Id.*

¶ 7. The Fourth Amendment to the United States Constitution provides that:

[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV. The Wisconsin Constitution is essentially the same. WIS. CONST. art. I, § 11.

¶ 8. "Warrantless searches 'are per se unreasonable under the fourth amendment, subject to a few carefully delineated exceptions' that are 'jealously and carefully drawn.' " *State v. Kryzaniak*, 2001 WI App 44, ¶ 14, 241 Wis. 2d 358, 624 N.W.2d 389 (citations omitted). "It is axiomatic that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.' " *Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984) (citation omitted). A fundamental safeguard against unnecessary invasions into private homes is the Fourth Amendment's warrant requirement, imposed on all governmental agents who seek to enter the home for purposes of search or arrest. *Id.* The Fourth Amendment stands for the right of a person to retreat into his/her own home and there be free from unreasonable governmental intrusion. *Payton v. New York*, 445 U.S. 573, 589–90 (1980). "When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent" who may be caught up in the "competitive enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 14 (1948).

¶ 9. If the police do not have a warrant, they bear the heavy burden of trying to demonstrate exigent circumstances to overcome the presumption of unreasonableness. *Welsh*, 466 U.S. at 750. Four factors have been identified that, when measured against the time needed to obtain a warrant, constitute the 'exigent circumstances required for a warrantless entry: (1) an arrest made in "hot pursuit"; (2) a threat to the safety of a suspect or others; (3) a risk that evidence would be destroyed; and (4) a likelihood that the suspect would flee. *State v. Smith*, 131 Wis. 2d 220, 229, 388 N.W.2d 601 (1986).

¶ 10. It is undisputed here that the police entered the home without a warrant. Thus, we start from a position of presuming that the entry violated the Fourth Amendment. The burden is on the government to overcome that presumption. To prove that the entry was lawful, the government must demonstrate that: (1) the police had probable cause to believe that the house contained drugs; and (2) that the exigent circumstance of destruction of evidence existed. *See Hughes*, 2000 WI 24 at ¶ 8. We conclude that the State has failed to overcome the presumption.

*A. Probable Cause.*

¶ 11. The trial court in this case did not find that probable cause to search the house existed. Rather, the trial court ruled that the officers had reasonable suspicion, plus exigent circumstances. The State, however, contends that the officers had probable cause.

¶ 12. The officers had the following facts: (1) this location was a "hot spot"; (2) during the short time they were observing the home, three people entered, stayed a short period of time, and then exited; (3) the officers had been to this home two months earlier to make arrests for drug dealing; (4) the officers observed Rodriguez riding his bike outside the residence and, when approached, Rodriguez fled. From these circumstances, the State asks this court to conclude that the officers had probable cause to believe that there was drug activity occurring inside the home.

**[11]**

¶ 13. We cannot so conclude. Although flight from a police officer in a drug-trafficking area may constitute reasonable suspicion to conduct a *Terry* stop,[2] it does not rise to the level of probable cause. *See Illinois v. Wardlow*, 528 U.S. 119 (2000).

¶ 14. In a search context, the proper probable cause inquiry is whether evidence of a crime will be found. *Hughes*, 2000 WI 24 at ¶ 21 . "The quantum of evidence required to establish probable cause to search is a 'fair probability' that contraband or evidence of a crime will be found in a particular place." *Id.* (citation omitted).

¶ 15. Here, that fair probability standard has not been satisfied. The police officers had never seen Rodriguez before this date. No officer actually saw any drugs on Rodriguez or the other three individuals who came and left the home while the officers were watching. The officers did not observe anyone actually selling drugs, or identify any of the individuals as known drug dealers. In fact, Officer Kohlhepp testified that he

---

[2] *Terry v. Ohio*, 392 U.S. 1 (1968).

thought Rodriguez fled because of the "possibility" that Rodriguez would destroy evidence. In addition, the officers never identified themselves as the police, and they never asked Rodriguez to stop. Fleeing from strangers into the safety of a home does not constitute a "fair probability" that drugs will be found. Under these circumstances, we conclude that the State failed to overcome the presumption that the search in this case was unreasonable.

*B. Exigent Circumstances.*

¶ 16. Even if probable cause existed, the State would also have to prove that exigent circumstances were present. The State rests its argument solely on the exigent circumstance of destruction of evidence. The State contends that exigent circumstances existed because Rodriguez ran into the home, presumably to tell whoever was inside that the police were outside so that any illegal drugs could be destroyed. We are not convinced that the circumstances here present the exigency required to overcome the Fourth Amendment's guarantee that individuals are entitled to retreat into the sanctity of their homes.

¶ 17. In assessing the applicability of the exigent circumstances exception to the warrant requirement for entry into private residences, we balance the urgency of a police officer's need to enter against the time needed to obtain a warrant. *State v. Richter*, 2000 WI 58, ¶ 28, 235 Wis. 2d 524, 612 N.W.2d 29. The State bears the burden of proving the existence of exigent circumstances to justify warrantless entry into the home. *Id.* at ¶ 29.

■■

¶ 18. The existence of exigent circumstances justifying the warrantless entry into a home turns on considerations of reasonableness and involves an objective test: " 'whether a police officer under the circumstances known to the officer at the time [of entry] reasonably believes that delay in procuring a warrant would gravely endanger life or risk destruction of evidence or greatly enhance the likelihood of the suspect's escape.' " *Id.* at ¶ 30 (citation omitted).

¶ 19. Here, the State argues that because the officers knew that this was a "hot spot," that they had been at the residence two months earlier for drug arrests, that three people came and went from the residence during the officers' observation, and that Rodriguez was riding his bike around outside and then fled when asked, "What's up?" by one of the officers, the exigent circumstances exception applies. We cannot agree. There was no evidence that the officers had reason to believe that Rodriguez was a drug dealer or user. The officers had never seen him before. There is no evidence that the officers saw any known or suspected drug dealer or user enter or exit the residence. There is no evidence that the officers saw any illegal drugs.

■■■■

¶ 20. Moreover, the State cannot rely on the "hot pursuit" exception because "hot pursuit" is defined as an "immediate or continuous pursuit of [a suspect] from the scene of a crime." *State v. Kryzaniak*, 2001 WI App 44, ¶ 17, 241 Wis. 2d 358, 624 N.W.2d 389. There is nothing in the record to indicate that Rodriguez was a suspect being chased from the scene of a crime.

¶ 21. This case presents a somewhat unusual set of facts: where a *Terry* stop is essentially prevented

because the individual retreats into a home. We have held that a suspect may not walk away from an officer conducting a *Terry* stop, and that the officer may restrain any suspect who attempts to do so. *State v. Goyer*, 157 Wis. 2d 532, 538, 460 N.W.2d 424 (Ct. App. 1990) ("[t]he right to make a *Terry* stop would mean little if the officer could not restrain a suspect who attempts to walk away from the investigation"). However, the circumstances presented here are distinct from *Goyer*. First, the police officers never identified themselves, which they must do in order to conduct a valid *Terry* stop. WIS. STAT. § 968.24. Second, Rodriguez was never ordered to stop by the police, as in *Goyer*. The only thing the officer said to Rodriguez was, "What's up?" Officer Santiago confirmed that the police officers said nothing else to Rodriguez.

¶ 22. Thus, the question becomes whether the warrantless entry into a home is justified when an individual flees from an officer attempting to conduct an investigative stop. As in most Fourth Amendment cases, we cannot set forth a bright-line rule, but must examine each case under its particular facts and circumstances. We are offered some guidance from *Welsh*, where the United States Supreme Court addressed a situation involving a drunk driver who abandoned his car and walked home before the police arrived at the scene. *Welsh*, 466 U.S. at 742. In that case, the police obtained Welsh's address and when his stepdaughter answered the door, the police gained entry into the home. *Id.* at 742–43. The police proceeded to arrest Welsh for drunk driving. *Id.* at 743. The Supreme Court found that this entry and arrest violated the Fourth Amendment. *Id.* at 754–55. They relied in part upon the gravity of the underlying offense: the "special protec-

tion afforded the individual in his home by the Fourth Amendment" *id.* at 754, based on the exigent circumstances exception, "in the context of a home entry should rarely be sanctioned when there is probable cause to believe that only a minor offense . . . has been committed." *Id.* at 753. Here, the officers did not have probable cause to believe any offense had been committed. Rather, at best, the information they had supplied only reasonable suspicion.

¶ 23. Thus, Rodriguez is entitled to the "special protection" afforded by the Fourth Amendment in guarding against unreasonable searches into private homes. In that respect, if an officer is going to enter a private residence without a warrant, the exigency factors must rise well above the facts and circumstances presented here. If we sanction a warrantless entry based upon bicycle riding, three visitors in and out of the home, and Rodriguez retreating into the home when asked, "What's up?" by strangers in an unmarked police car, we may as well grab a toboggan and start sliding because the revered privacy of an individual in his/her own home will become a slippery hill.

## III. CONCLUSION

¶ 24. We conclude that the State failed to overcome the presumption that the warrantless search of a private residence is per se unreasonable. We conclude that the State failed to establish probable cause or exigent circumstances. Accordingly, we must reverse the judgment and remand the matter, with directions to the trial court to suppress the evidence obtained as a result of the illegal entry.

*By the Court.*—Judgment reversed and cause remanded with directions.

¶ 25. SCHUDSON, J. (*concurring*). Although I agree that we must reverse, I depart from the majority's analysis and offer a different approach.

¶ 26. In the trial court, the prosecutor argued that the warrantless entry was justified by *probable cause* and exigent circumstances. The trial court found, however, that the police had *reasonable suspicion,* which, in combination with exigent circumstances, supported the warrantless entry. Rodriquez argues that the trial court applied the wrong standard. Rodriguez is correct.

¶ 27. Rodriguez maintains that under *Payton v. New York*, 445 U.S. 573 (1980) and its progeny, *reasonable suspicion* and exigent circumstances are not sufficient to justify a warrantless home entry; *probable cause* and exigent circumstances are required. The State concedes Rodriquez' legal premise. The State argues, however, that "the trial court's mention of reasonable suspicion may have been a simple misstatement." The State also argues that the officers did have "probable cause to believe that the *residence* contained evidence of a crime," and that "it was reasonable for the officers to believe there was a fair probability that evidence of drug activity would be found *in the residence*." (Emphases added.) The State's arguments are flawed in two respects.

¶ 28. First, the record belies the State's contention that the court's reference to *reasonable suspicion* "may have been a simple misstatement." The prosecutor had argued *probable cause,* but the trial court's comments were specific and repeated:

> If the defendant had ... essentially walked into the house and closed this door, that ... would [have] been the end of the police involvement, but the fact [is] that ... upon the initiation of conversation with the

748

police as to "what's up?"[,] his response is to take flight. It is at this time as he takes flight, *the Court finds that the police have reasonable suspicion.* Although they've testified at this point that there was observable activity which they believed was suspicious, it's the flight in the totality of circumstances which gives *reasonable suspicion.*

. . . .

The police at this point in time are doing nothing more than continuing the investigation, and at this time, given the *reasonable suspicion* of the defendant, they are pursuing the defendant.

(Emphases added.)

¶ 29. Second, at best, the State has offered an argument for facts that could have supported a search warrant for *the residence.* Probable cause to believe that "evidence of drug activity" was in the residence, however, cannot be superimposed on Rodriquez to establish probable cause for a warrantless entry to arrest him.

¶ 30. In the trial court, the prosecutor, apparently realizing that probable cause was necessary to justify the warrantless entry, argued that the facts established probable cause. The court, however, reasonably rejected her argument and, instead, found that the facts established only reasonable suspicion. To that point, the court was correct. The trial court, however, then erred in failing to recognize that reasonable suspicion could not support a warrantless home entry.

¶ 31. Accordingly, I would summarily reverse and, therefore, I respectfully concur.