STATE of Wisconsin, Plaintiff-Respondent,

v.

James L. LARSON, Defendant-Appellant.

Court of Appeals

*No. 02–2881–CR. Submitted on briefs March 12, 2003.—Decided June 18, 2003.*

2003 WI App 150

(Also reported in 668 N.W.2d 338.)

239

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Rex R. Anderegg* of *Anderegg & Mutschler, LLP* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Mark Powers*, Waukesha County District Attorney.

Before Nettesheim, P.J., Brown and Anderson, JJ.

¶ 1. BROWN, J. James L. Larson appeals from a judgment convicting him of operating a motor vehicle while intoxicated contrary to Wis. Stat. § 346.63(1)(a) (2001–02).[1] Larson contends that the trial court erred by denying his motion to suppress evidence seized subsequent to a police officer entering his residence without a warrant in violation of his Fourth Amendment rights. This court agrees with Larson and, therefore, reverses the judgment and remands the matter to the trial court for further proceedings.

¶ 2. The following facts are not in dispute. On February 10, 2002, Deputy Jeff Zuhlke of the Waukesha County Sheriff's Department was on a routine patrol when he received a dispatch to look for a possibly intoxicated driver on Highway 18 in the area of Finn's Bar. Dispatch advised Zuhlke that the vehicle in ques-

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

tion was a maroon and silver pickup truck. As Zuhlke started heading towards the reported location of the vehicle, he received a second dispatch informing him that a clerk at the Kwik Trip gas station had called dispatch and stated that an intoxicated driver in a vehicle with the same description had just left the gas station without its headlights illuminated. According to the clerk, the driver had seemed intoxicated when he was inside the station. Zuhlke continued traveling in the direction of the vehicle and dispatch provided him with the license plate number of the vehicle. Zuhlke ran the plate number on his squad car's computer, obtained an address for the registered owner, and headed for that location. Zuhlke identified Larson as the registered owner of the vehicle.

¶ 3. As Zuhlke pulled up to the apartment building, he observed a vehicle fitting the general description given by dispatch parked at that address and proceeded to what he believed to be the registered owner's, or Larson's, apartment. Zuhlke's sole purpose for proceeding to the door of the apartment was to investigate its occupant for possibly operating while intoxicated. Zuhlke, who was in full uniform, knocked on the door and spoke with an individual who answered the door. As part of procedure to ensure his own safety, Zuhlke. placed his foot across the threshold of the doorway, so that the individual who answered the door would not be able to slam the door on him. Zuhlke then began questioning the individual who had answered the door. The individual identified himself as Larson and admitted that he was the owner of the vehicle.

¶ 4. As Zuhlke spoke with Larson, he smelled the odor of intoxicants and detected slurred speech. Larson admitted having just driven home from Finn's Bar and stated that he was home and going to bed. Larson also

indicated that he had not consumed intoxicants since he had arrived at his apartment. Based upon his conversation with Larson, Zuhlke believed that Larson was under the influence of an intoxicant and would not be able to drive a motor vehicle. Zuhlke moved further into the apartment and placed Larson under arrest. Lieutenant Dehring, who had just arrived as back up, searched Larson's briefcase and obtained his driver's license. Sometime after the officers placed Larson under arrest, Dehring made contact with both of the callers who had contacted dispatch and identified Larson's truck.

¶ 5. On February 12, Larson was charged with operating a motor vehicle while intoxicated in violation of Wis. Stat. § 346.63(1)(a) and (b). The complaint alleged that this was a second offense, making it a criminal prosecution.

¶ 6. Larson filed a motion to suppress, arguing that Zuhlke lacked probable cause to arrest. At a June 10 hearing concerning the motion to suppress, Larson raised three distinct issues: (1) whether the officer lacked reasonable suspicion to intrude into Larson's apartment to investigate him for possibly operating while intoxicated; (2) whether the officer lacked probable cause to arrest Larson given the officer's failure to request or conduct field sobriety tests or a preliminary breath test; and (3) whether the officer lacked probable cause and exigent circumstances to immediately enter Larson's apartment upon his arrival at that location. The trial court ruled against Larson on all three issues and denied the motion. Larson subsequently pled no contest to the charges and was sentenced to jail. Larson then commenced this appeal.

¶ 7. On appeal, Larson challenges the trial court's denial of his motion to suppress, arguing that his Fourth Amendment rights were violated when Zuhlke entered his apartment without his consent and without an arrest warrant.[2] In reviewing an order denying a motion for the suppression of evidence, we will uphold a circuit court's findings of fact unless they are against the great weight and clear preponderance of the evidence. *State v. Richardson*, 156 Wis. 2d 128, 137, 456 N.W.2d 830 (1990). However, the application of constitutional principles to those facts is a question of law that we review de novo. *State v. Patricia A.P.*, 195 Wis. 2d 855, 862, 537 N.W.2d 47 (Ct. App. 1995).

¶ 8. The Fourth Amendment to the United States Constitution provides that

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

---

[2] The State asserts that Larson waived this argument because he did not raise this issue at the trial court level. This argument is without merit. Larson specifically raised this issue at the suppression hearing, arguing that when "[Zuhlke] crossed the threshold and put his foot across the door" it was a warrantless entry in violation of his Fourth Amendment rights. Furthermore, in its oral ruling the trial court recognized Larson's argument and dismissed it by saying: "[A]s to the intrusion into the apartment by sticking a foot in the door, this court's not prepared to say that's a violation of any, quote, Amendment."

U.S. CONST. amend. IV. The Wisconsin Constitution is essentially the same. WIS. CONST. art. I, § 11. "It is axiomatic that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" *Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984) (citation omitted). A fundamental safeguard against unnecessary invasions into private homes is the Fourth Amendment's warrant requirement, imposed on all governmental agents who seek to enter the home for purposes of search or arrest. *See id.* It is not surprising, then, that the United States Supreme Court has recognized that all warrantless searches and seizures inside a home are presumptively unreasonable. *Id.* at 748–49.

¶ 9. The police bear a heavy burden when trying to establish an urgent need justifying warrantless searches and seizures. *See id.* at 749–50. Before the government may invade the sanctity of the home without a warrant, the government must demonstrate not only probable cause but also exigent circumstances that overcome the presumption of unreasonableness. *See State v. Smith*, 131 Wis. 2d 220, 228, 388 N.W.2d 601 (1986).

¶ 10. The first issue this court must consider is whether Zuhlke's step into the threshold of Larson's apartment, which prevented Larson from closing the door, was an entry into Larson's apartment triggering the Fourth Amendment's warrant requirement. In *State v. Johnson*, 177 Wis. 2d 224, 227, 501 N.W.2d 876 (Ct. App. 1993), two police officers were interviewing individuals in an apartment building where an extremely high number of drug problems had been reported. Johnson entered the apartment building and was subsequently frisked and questioned. *Id.* Johnson

failed to produce identification so the officers accompanied him to a second-floor apartment where he said his identification was located. *Id.* An officer entered the apartment doorway just enough so Johnson could not slam the door shut. *Id.* at 228. We concluded that when the police officer placed his foot in the doorway to prevent the defendant from closing the door, the act constituted an entry for Fourth Amendment purposes. *Id.* at 231. In reaching this conclusion, we explained the "Fourth Amendment has drawn a firm line at the entrance to the house." *Id.* (citation omitted).

¶ 11. This court's decision in *Johnson* clearly teaches that even if the officer's incursion only extends from the tips of his toes to the balls of his feet, this incursion is the fixed "first footing" against which the United States Supreme Court and the Wisconsin Supreme Court have previously warned. *Id.* at 232. Applying this reasoning to the instant case, it is without question that Zuhlke's step into the threshold, preventing Larson from closing the door, was an entry for Fourth Amendment purposes.[3]

---

[3] The police practice of putting a foot in the doorway appears to be a common and widespread practice, at least in Wisconsin, and also may be the practice when investigating tips involving drunk drivers. In at least one other case, an unpublished one, the officer put his foot in the door of a suspected drunk driver following a tip of erratic driving. While *State v. Johnson*, 177 Wis. 2d 224, 501 N.W.2d 876 (Ct. App. 1993), sets forth the law in Wisconsin regarding this practice, this is the first case to apply *Johnson* to investigation of tips involving intoxicated motorists. Whether we agree with the reasoning in *Johnson* is beside the point. We are bound by prior published court of appeals opinions. *See Cook v. Cook*, 208 Wis. 2d 166, 189–90, 560 N.W.2d 246 (1997) (stating that the court of appeals

¶ 12. The State, citing *United States v. Santana*, 427 U.S. 38 (1976), maintains that Zuhlke conversed with and arrested Larson in a public place and not in a home and, therefore, no warrant was required and the arrest was lawful. *Santana*, however, is distinguishable from the case at bar.

¶ 13. In *Santana*, the United States Supreme Court upheld the warrantless arrest of a defendant who was in a public place. *Id.* at 42. The defendant, whom one of the officers recognized and had probable cause to arrest, was already standing in the doorway of her house when the police arrived; "one step forward would have put her outside, one step backward would have put her in the vestibule of her residence." *Id.* at 40 n.1, 42. The Court explained in its conclusion that the defendant, when arrested, was in a public place: "She was not in an area where she had any expectation of privacy . . . . She was not merely visible to the public but was as exposed to public view, speech, hearing, and touch as if she had been standing completely outside her house." *Id.* at 42.

■

¶ 14. In contrast, in this case, Larson was not seen by the police until Zuhlke knocked on his apartment door and he answered. Larson had not been musing about his apartment with the door open for everyone outside to see him; unlike the defendant in *Santana*, he had not, in any way, exposed himself to public view and relinquished his expectation of privacy. As the Indiana Supreme Court has observed,

does not have the power to overrule, modify or withdraw language from a published opinion of the court of appeals or of the supreme court).

> Opening the door to ascertain the purpose of an inter-
> ruption to the private enjoyment of the home is not an
> invitation to enter, but rather is a common courtesy of
> civilized society. Attendant to this courtesy is the ability
> to exclude those who are knocking and preserve the
> integrity of the physical boundaries of the home.

*Cox v. State*, 696 N.E.2d 853, 858 (Ind. 1998). We therefore reject the State's contention that Zuhlke's conversation with and subsequent arrest of Larson occurred in a public place pursuant to *Santana*.

¶ 15. Having established that Zuhlke did enter Larson's apartment for purposes of the Fourth Amendment, we next consider whether Zuhlke was permitted to enter Larson's apartment to arrest him for operating while intoxicated without an arrest warrant. The burden to justify a warrantless in-home entry is on the State. *Smith*, 131 Wis. 2d at 228. As we have indicated, the State must prove that there was probable cause to arrest and, in addition, exigent circumstances that could not brook the delay incident to obtaining a warrant. *Id.*

¶ 16. To determine if probable cause exists, the court must consider whether "the totality of the circumstances within the arresting officer's knowledge at the time of the arrest would lead a reasonable police officer to believe . . . that the defendant was operating a motor vehicle while under the influence of an intoxicant." *State v. Nordness*, 128 Wis. 2d 15, 35, 381 N.W.2d 300 (1986). At the time of his arrival, Zuhlke knew only that two tipsters had called dispatch, alleging that the driver of the maroon and silver truck parked outside the apartment building was driving while intoxicated. Zuhlke had not yet smelled the odor of intoxicants on

Larson's breath, detected his slurred speech, or even obtained his concession that he had been driving the maroon and silver truck. Consequently, we do not believe that it can be reasonably maintained that at the moment Zuhlke put his foot inside the doorway he had probable cause to arrest Larson.

¶ 17. Nevertheless, even if we assume probable cause to arrest existed, the State has not demonstrated that exigent circumstances were present that would justify a warrantless entry. The basic test to determine whether exigent circumstances exist is an objective one: "Whether a police officer under the circumstances known to the officer at the time reasonably believes that delay in procuring a warrant would gravely endanger life or risk destruction of evidence or greatly enhance the likelihood of the suspect's escape." *Smith*, 131 Wis. 2d at 230. Four factors have been identified that, when measured against the time needed to obtain a warrant, constitute the exigent circumstances required for a warrantless entry: (1) an arrest made in "hot pursuit," (2) a threat to the safety of a suspect or others, (3) a risk that evidence would be destroyed, and (4) a likelihood that the suspect would flee. *Id.* at 229.

¶ 18. In *Welsh*, 466 U.S. at 742, the United States Supreme Court considered the issue of whether "the Fourth Amendment prohibits the police from making a warrantless night entry of a person's home in order to arrest him for violation of a nonjailable traffic offense." The facts revealed that Welsh was observed driving his car erratically, causing it to swerve off the road into a field. *Id.* Even though a witness suggested that he remain with the car and wait for assistance, Welsh walked away from the scene. *Id.* Police checked the car's

registration and, without obtaining a warrant, proceeded to Welsh's home, where he was arrested for driving a motor vehicle while under the influence of an intoxicant. *Id.* at 742–43.

¶ 19. Although probable cause existed to arrest Welsh, the Supreme Court concluded that the warrantless entry into Welsh's home violated the Fourth Amendment because the police did not establish the existence of exigent circumstances. *Id.* at 753. The Court reasoned:

> Our hesitation in finding exigent circumstances, particularly when warrantless arrests in the home are at issue, is especially appropriate when the underlying offense for which there is probable cause to arrest is relatively minor. Before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries. When the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut, and the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate.

*Id.* at 750 (citation and footnote omitted).[4]

---

[4] In *Welsh v. Wisconsin*, 466 U.S. 740, 746 n.6 (1984), the petitioner was charged with a second offense OWI, just as Larson was here. Yet, the United States Supreme Court considered the offense to be "minor" at the time of the warrantless entry. *See id.* at 750. The Supreme Court reasoned as follows:

> The petitioner was charged with a criminal misdemeanor because this was his second such citation in the previous five years. Although the petitioner was subject to a criminal charge, the police conducting the warrantless entry of his home did not know that

¶ 20. This court concludes that like the officers in *Welsh*, the police officer in this case was not faced with exigent circumstances during his encounter with Larson at his apartment. Exigent circumstances may, in some circumstances, arise because of the danger to life if the arrest is not made immediately. Only where a delay in the investigation would gravely endanger lives

the petitioner had ever been charged with, or much less convicted of, a prior violation for driving while intoxicated. It must be assumed, therefore, that at the time of the arrest the police were acting as if they were investigating and eventually arresting for a nonjailable traffic offense that constituted only a civil violation under the applicable state law.

*Id.* at 746 n.6 (citations omitted).

We candidly admit that calling *any* OWI a "minor" offense makes us wince, even if the first offense only results in a nonjailable civil forfeiture if convicted. *See, e.g., State v. Rutzinski*, 2001 WI 22, ¶ 35, 241 Wis. 2d 729, 623 N.W.2d 516 (comparing a drunk driver to a mobile bomb); *State v. Carlson*, 2002 WI App 44, ¶ 23, 250 Wis. 2d 562, 641 N.W.2d 451 (commenting, "[i]t is clear that a serious threat to human life and well-being is posed by drunk drivers. Drunk driving and its consequences represent one of our society's gravest problems."); *State v. Krause*, 168 Wis. 2d 578, 590, 484 N.W.2d 347 (Ct. App. 1992) (stating that drunk driving is pervasively antisocial and that the "[OWI statute's] escalating penalty scheme reflects a recognition that repeat drunk driving is even more intolerable."). But such is the law and we are not at liberty to ignore it. In this case, there is no evidence that the officer knew Larson was a repeat offender at the time he confronted him in the doorway of Larson's apartment. If he had such knowledge, this might be a different case. Without such knowledge, we are constrained to say that when the officer knocked on Larson's door, he was investigating a nonjailable traffic incident.

does this factor in the exigency formulation come into play. The facts of this case do not present such a situation.

¶ 21. Additionally, as reasoned in *Welsh*, the claim of "hot pursuit" is unconvincing because there was no immediate or continuous pursuit of Larson from the scene of the crime. *See id.* at 753. Also, because Larson had already arrived at home, and had parked his car, there was little threat to the public safety. *See id.* Thus, the only potential emergency claimed by the State was the need to ascertain Larson's blood alcohol level.

¶ 22. Arguably, because blood rapidly metabolizes alcohol after a person ceases drinking, an exigent situation may have existed. *See State v. Bentley*, 92 Wis. 2d 860, 864, 286 N.W.2d 153 (Ct. App. 1979). Without an immediate blood alcohol test, highly reliable and persuasive evidence facilitating the State's proof of Larson's alleged violation of WIS. STAT. § 346.63(1)(a) would be destroyed. However, as expressed in *Welsh*, a warrantless home arrest cannot be upheld simply because evidence of Larson's blood alcohol level might have dissipated while the police obtained a warrant. *See Welsh*, 466 U.S. at 753.

¶ 23. The only possible remaining justification for Zuhlke's entry is consent. However, the record is devoid of any evidence suggesting that Larson did or said anything that can be construed as actual or constructive consent for Zuhlke to enter his apartment.

¶ 24. This court concludes that absent a warrant, consent or probable cause and exigent circumstances, police entry into Larson's apartment was illegal, and

251

any evidence gained after the entry into his apartment must be suppressed. Accordingly, this court reverses the decision of the trial court denying Larson's motion to suppress and remands the case to the trial court for further proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded with directions.