County of Green Lake, Plaintiff-Respondent,
v.
Donna Polakowski, Defendant-Appellant.
No. 04-0298.
Court of Appeals of Wisconsin.
Opinion Filed: June 30, 2004.
¶1 ANDERSON, P.J.[1]
A warrantless entry into a private residence is presumptively unreasonable. Contrary to the trial court's ruling, the protections of the Fourth Amendment are not contingent upon a sheriff deputy's subjective belief that the suspect being pursued is not the owner of the residence that the deputy entered without a warrant; therefore, we reverse the denial of Donna Polakowski's motion to suppress.
¶2 Green Lake County Sheriff's Deputy Kevin Manning was conducting a routine traffic stop at 1:51 a.m. on January 26, 2003, when he heard a vehicle traveling at a high rate of speed, in excess of the fixed thirty-five mile per hour limit for the road he was stopped on. He watched the vehicle stop twenty feet behind his parked squad for thirty seconds, back up and turn down another road. He then saw this vehicle stop on the road fifteen feet beyond a driveway, backup and turn into the driveway. Needless to say, Manning considered this driving out of the ordinary and decided to investigate. He drove into the driveway, turned off his emergency lights and parked some distance behind the vehicle with his squad on an angle so his headlights would light up the area. Manning watched a female, eventually identified as Polakowski, get out on the driver's side, and as she walked toward the house, he beeped his squad's horn and said, twice, "Hey, I need to speak with you."
¶3 Polakowski continued into the residence with Manning close behind. Manning prevented her from closing the door into the residence and entered the residence right on her heels. Inside, Polakowski was uncooperative and did not want to go outside with Manning. Manning went over to Polakowski, grabbed her by the arm and escorted her outside. Once outside, Manning noticed the odor of intoxicants, slurred speech and that Polakowski was unsteady on her feet, and he reached the conclusion that she might be under the influence of intoxicants.
¶4 Polakowski was issued citations for first offense operating while intoxicated (OWI), WIS. STAT. § 346.63(1)(b), and operating with a prohibited alcohol concentration (PAC), § 346.63(1)(b). She brought a motion to suppress all evidence on the grounds that the deputy did not have reasonable suspicion to stop her or probable cause to arrest her. After a brief evidentiary hearing, at which Manning was the only witness, the trial court denied the motion. First, the court found reasonable suspicion to effect the stop. Second, the court found that Manning's entry into the residence did not violate the Fourth Amendment and there was probable cause to arrest:
[T]he Court does so on the basis that the sequence of events here, the observing of the erratic or reckless driving, the pursuit of the officer into the driveway ... nothing in the record indicates that the officer knew who the defendant was or knew that the defendant was entering a residence that was in fact hers but rather had simply demonstrated erratic driving that in the view of the Court could have been viewed as some type of driving thatand retreat into a driveway being to evade the police officer .... The officer did not indicate that he knew the defendant, knew that this was the defendant's home or knew at any time that the defendant was entering her own home.... The Court doesn't believe that entering a home without first knowing that it might be a protected home would certainly not require that the officer stop because I believe that protection would apply to the home of the individual being pursued, not just a home or an enclosure or somebody's home. Having entered the home, having commenced his investigation, ostensibly based on the testimony of the driving, the officer then made the observation about the gait, about the speech, about the eyes, the odor of alcohol, and as the Court indicated, that at best would be minimal probable cause to believe that the individual was impaired, but that coupled with the circumstances giving rise to the initial contact ... all taken into its totality, would satisfy the Court that it minimally meets the probable cause test.
¶5 Polakowski then entered a "no contest" plea to the first offense OWI charge and was found guilty. She appeals from the denial of her motion to suppress.[2] Polakowski argues that before law enforcement can enter a residence, whether it is to search or to make an arrest, "they must have a warrant, unless there is consent, or exigent circumstances." She contends that the trial court was wrong when it held that because the deputy did not know she lived in the residence, she was not afforded constitutional protections. She also challenges the trial court's conclusion that the observations the deputy made of Polakowski after he entered the residence without a warrant are sufficient to add up to probable cause to support an arrest.
¶6 In reviewing a denial of a motion to suppress we will uphold a trial court's findings of fact unless they are clearly erroneous. State v. Eckert, 203 Wis. 2d 497, 518, 553 N.W.2d 539 (Ct. App. 1996). However, whether a search and seizure satisfies constitutional demands is a question of law subject to de novo review. Id.
¶7 The Fourth Amendment to the United States Constitution guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." The Wisconsin Constitution provides a nearly identical protection in article I, section 11. State v. Murdock, 155 Wis. 2d 217, 226-27, 455 N.W.2d 618 (1990). Therefore, Wisconsin courts have "consistently and routinely conformed the law of search and seizure under the state constitution to that developed by the United States Supreme Court under the fourth amendment." Id. at 227 (citation omitted). It is well established that the Fourth Amendment does not prohibit all searches and seizures but only those that are unreasonable. Id.
¶8 "[A]t the very core [of the Fourth Amendment] stands the right of a man [or woman] to retreat into his [or her] own home and there be free from unreasonable governmental intrusion." Payton v. New York, 445 U.S. 573, 589-90 (1980) (citation omitted). Moreover, the decision of when the right to privacy must reasonably yield to the right to search is, as a rule, to be determined by a judicial officer and not by a policeman or government enforcement agent who may be caught up in the "competitive enterprise of ferreting out crime." Johnson v. United States, 333 U.S. 10, 14 (1948). Thus, the warrantless search of a house is presumptively unreasonable. See Welsh v. Wisconsin, 466 U.S. 740, 749-50 (1984).
¶9 Although warrantless searches are strongly disfavored, "our laws recognize that, under special circumstances, it would be unrealistic and contrary to public policy to bar law enforcement officials at the doorstep." State v. Smith, 131 Wis. 2d 220, 228, 388 N.W.2d 601 (1986). Therefore, a handful of exceptions have been "jealously and carefully drawn" to balance the interests of the individual with those of the State. State v. Monosso, 103 Wis. 2d 368, 372, 308 N.W.2d 891 (Ct. App. 1981) (citation omitted). In Smith, 131 Wis. 2d at 229, the supreme court
identified four factors which, when measured against the time needed to obtain a warrant, would constitute the exigent circumstances required for a warrantless entry: (1) An arrest made in "hot pursuit," (2) a threat to safety of a suspect or others, (3) a risk that evidence would be destroyed, and (4) a likelihood that the suspect would flee. (Citation omitted.)
¶10 "Exigent circumstances exist where it is dangerous not to act immediately." State v. Drogsvold, 104 Wis. 2d 247, 264-65, 311 N.W.2d 243 (Ct. App. 1981). "The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others." Id. (citation omitted.) Our review of exigent circumstances is directed by a flexible test of reasonableness under the totality of the circumstances. See Smith, 131 Wis. 2d at 229. The County bears a heavy burden of proving an urgent need justifying the warrantless entry into a residence. See State v. Larson, 2003 WI App 150, ¶9, 266 Wis. 2d 236, 668 N.W.2d 338. "Before the government may invade the sanctity of the home without a warrant, the government must demonstrate not only probable cause but also exigent circumstances that overcome the presumption of reasonableness." Id.
¶11 The first issue we address is whether Manning's entry triggered the protections of the Fourth Amendment. See id., ¶10. There is no question that Manning entered a residence. He testified, "the defendant then went down into the residence and attempted to close the door, and I was immediately behind her and prevented the door from being closed and entered the residence." He also testified that he had to go ten feet into the residence to physically restrain Polakowski and lead her out of the residence. Manning's substantial entry into the residence was an entry triggering the Fourth Amendment's warrant requirements. See United States v. United States District Court, 407 U.S. 297, 313 (1972) (physical entry of a residence "is the chief evil against which ... the Fourth Amendment is directed").
¶12 The trial court erred when it held that the protections of the Fourth Amendment did not apply to the residence because Manning did not know if the residence he was entering was the residence of Polakowski. This court can find no authority to support the proposition that a law enforcement officer can ignore the plain language of the Fourth Amendment if he or she has reason to believe that the person being pursued is not the owner of the residence. As a federal court of appeals has written:
Common sense and a rudimentary familiarity with our national history and consciousness tell us that no privacy interest strikes closer to the heart of the fourth amendment than protection from physical entry of the home. It is for this reason that the Supreme Court has called "the physical entry of the home ... the chief evil against which the wording of the Fourth Amendment is directed." For as we [have] stated ..., "The mere thought of strangers walking through and visually examining the center of our privacy interest, our home, arouses our passion for freedom as nothing else."
U.S. v. Freitas, 856 F.2d 1425, 1430 (9th Cir. 1988) (citations omitted). In fact, the trial court's position is contrary to elementary Fourth Amendment law:
Crime, even in the privacy of one's own quarters, is, of course, of grave concern to society, and the law allows such crime to be reached on proper showing. The right of officers to thrust themselves into a home is also a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent.
Johnson, 333 U.S. at 14 (1948).
¶13 We believe that the trial court was misapplying the law of standing to Manning's warrantless entry into the Polakowski residence. "The Fourth Amendment protects the home and the area around it, to the extent that an individual has a reasonable expectation of privacy." State v. Wilson, 229 Wis. 2d 256, 264, 600 N.W.2d 14 (Ct. App. 1999) (emphasis omitted). Fourth Amendment law provides that a person may assert a claim under the Fourth Amendment only if he or she has a legitimate expectation of privacy in the invaded place. State v. Dixon, 177 Wis. 2d 461, 467, 501 N.W.2d 442 (1993). From these principles, we can work through the trial court's comments and conclude how the trial court thought that the protections of the Fourth Amendment would not apply to a residence not owned by the person being pursued. However, whether or not a person has standing is not a decision that a police officer is allowed to make. First, an officer's subjective belief of the subject's ownership interest has no place in Fourth Amendment analysis. See State v. Kyles, 2004 WI 15, ¶30 n.22, 269 Wis. 2d 1, 675 N.W.2d 449. Second, as we have previously noted, the applicability of the Fourth Amendment is for a judicial officer, not a police officer, to decide. Johnson, 333 U.S. at 14.
¶14 Manning's entry into Polakowski's residence triggered the protections of the Fourth Amendment; for that reason, we turn to whether Manning was permitted to enter Polakowski's home to arrest her for OWI without a warrant. See Larson, 2003 WI App 150, ¶15. Whether undisputed facts constitute probable cause to arrest is a question of law, which we review without deference to the circuit court. State v. Babbitt, 188 Wis.2d 349, 356, 525 N.W.2d 102 (Ct. App. 1994). In conducting this review, we look to the totality of the circumstances to determine if the arresting officer's knowledge at the time of the arrest would lead a reasonable officer to believe that the defendant was operating a motor vehicle while under the influence of an intoxicant. State v. Nordness, 128 Wis.2d 15, 37, 381 N.W.2d 300 (1986). Probable cause to arrest is to be judged by "the factual and practical considerations of everyday life on which reasonable and prudent persons, not legal technicians, act." State v. Truax, 151 Wis. 2d 354, 360, 444 N.W.2d 432 (Ct. App. 1989). At the time he entered Polakowski's residence, the only information Manning had was his observation of her erratic driving which consisted of her stopping twice on a roadway, backing up a short distance and then turning down a different road into her driveway. We cannot conclude that at the time he crossed the threshold into the residence that Manning had probable cause to arrest Polakowski.
¶15 Even if we were to assume that probable cause to arrest existed, the County has not demonstrated that exigent circumstances were present that would justify a warrantless entry. See Larson, 266 Wis. 2d 236, ¶17. In Larson, we held that an officer's placement of his foot across the threshold of the entrance to an apartment constituted an unreasonable warrantless entry; in reaching that conclusion, we addressed exigent circumstances in light of Welsh and will not repeat that analysis here. Larson, 266 Wis. 2d 236, ¶¶17-22. Suffice it to say, based upon Welsh, we find that Manning was not faced with any exigent circumstances in this case. See Larson, 266 Wis. 2d 236, ¶20. There is nothing in the record to permit the conclusion that he was in "hot pursuit" of Polakowski or that there was an eminent threat of danger to life. See id. Additionally, because this is a first offense OWI under the rationale of Welsh, 466 U.S. at 753, the rapid dissipation of alcohol in the blood does not create an exigent circumstance. Larson, 266 Wis. 2d 236, ¶¶19, 22.
¶16 In its reply brief, the County does not undertake an attempt to support the trial court's ruling; rather, it contends that Manning had made a valid investigatory stop and Polakowski was in no position to thwart the stop by entering her residence.[3] Citing State v. Kelsey C.R., 2001 WI 54, 243 Wis. 2d 422, 626 N.W.2d 777, the County argues that when Manning twice beeped the horn of his squad and told Polakowski, "Hey, I need to speak with you," he made a show of authority and Polakowski was required to submit to an investigatory stop. Citing to cases from foreign jurisdictions, the County proceeds to argue that once the investigatory stop was made, Polakowski could not flee to a private sanctuary to thwart an opportunity for Manning to conduct the stop.
¶17 We agree with the County that a suspect does not control the duration of an investigative stop. State v. Goyer, 157 Wis. 2d 532, 537, 460 N.W.2d 424 (Ct. App. 1990). However, we disagree with the County that Manning's beeping of his marked squad's horn and telling Polakowski that he wanted to speak to her constituted a show of authority that initiated a reasonable stop. In Kelsey C.R., 243 Wis. 2d 422, ¶33, the supreme court held that not only must a police officer make a show of authority but also "the citizen must actually yield to that show of authority." In this case, the undisputed evidence is that Polakowski never yielded to Manning's show of authority. Manning testified that when he entered the driveway, he turned off his emergency lighting, parked a distance from Polakowski's car, and got out of his marked squad. He further testified that as Polakowski walked toward her house, he beeped the squad's horn twice and asked to talk to her but she did not respond to him and continued into the residence. We do not have to decide if the beeping of a squad's horn is a sufficient show of authority because by never acknowledging Manning's presence, Polakowski did not fulfill the second half of the equation, she did not yield to the deputy. Therefore, we reject the alternative argument offered by the County to support the trial court's denial of the motion to suppress.
¶18 Last of all, we turn to the question of whether there was consent to enter the Polakowski residence that would eliminate the warrant requirement of the Fourth Amendment. See State v. Tomlinson, 2002 WI 91, ¶20, 254 Wis. 2d 502, 648 N.W.2d 367 (consent is an exception to the warrant requirement). It cannot be argued that Polakowski's opening of the door and walking into her residence was consent for Manning to follow her. See Turner v. State, 754 A.2d 1074, 1086 (Md. App. 2000). Manning testified that Polakowski's spouse was in the residence when he entered and as he tried to get Polakowski outside, her spouse asked what was happening, then told Polakowski that she should cooperate and, finally, opened the door as Manning tried to escort Polakowski outside. While the spouse's comments and conduct suggest that he was cooperating with the deputy, they do not suggest that he was consenting to Manning's warrantless entry. In fact, they are suggestive of the spouse wanting the deputy out of his householding the door open as the deputy was leaving with Polakowski and telling Polakowski to go outside and to cooperate. Further, we look askance at a claim of consent when the "consent" is given after an illegal act by the police. State v. Trecroci, 2001 WI App 126, ¶50, 246 Wis. 2d 261, 630 N.W.2d 555.
¶19 In conclusion, we hold that the protections of the Fourth Amendment were triggered by Manning's entry into the Polakowski residence. Moreover, his warrantless entry into the residence does not fit within any of the carefully crafted exceptions to the warrant requirement of the Fourth Amendment.
By the Court.Judgment reversed.
NOTES
[1] This is a one-judge appeal pursuant to WIS. STAT. § 752.31(2)(g) (2001-02). All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.
[2] In an order, we directed Polakowski to address in her brief the issue of whether her no contest plea to a first offense OWI operated as a waiver of her right to appeal the denial of her motion to suppress. See Smith v. County of Racine, 122 Wis. 2d 431, 434, 362 N.W.2d 439 (Ct. App. 1984). After considering the argument made by Polakowski and the County of Green Lake, we are satisfied that the nature of the issue presenteda warrantless invasion of a private residence by law enforcementcompels us set aside the guilty plea waiver rule in this instance. County of Ozaukee v. Quelle, 198 Wis. 2d 269, 275-76, 542 N.W.2d 196 (Ct. App. 1995). Our obligation to protect and vindicate basic constitutional rights prevails over a rule of judicial administration.
[3] A respondent may advance for the first time on appeal any argument that will sustain the trial court's ruling. State v. Holt, 128 Wis. 2d 110, 124-25, 382 N.W.2d 679 (Ct. App. 1985).