NOTICE

*The text of this opinion can be corrected before the opinion is published in the*
*Pacific Reporter.  Readers are encouraged to bring typographical or other formal*
*errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska  99501*
*Fax:  (907) 264-0878*
*E-mail:  corrections @ appellate.courts.state.ak.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

|  |  |
|---|---|
| ISAAC D. SIEDENTOP,<br><br>     Appellant,<br><br>  v.<br><br>STATE OF ALASKA,<br><br>     Appellee. | Court of Appeals No. A-11085<br>Trial Court No. 4FA-10-4143 CR<br><br>O P I N I O N<br><br>No. 2424 — August 8, 2014 |

Appeal from the Superior Court, Fourth Judicial District, Fairbanks, Robert B. Downes, Judge.

Appearances: Brooke Berens, Assistant Public Advocate, Appeals and Statewide Defense Section, and Richard Allen, Public Advocate, Anchorage, for the Appellant.  Eric A. Ringsmuth, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Hanley, District Court Judge. [*]

Judge MANNHEIMER.

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

Isaac D. Siedentop appeals his convictions for third-degree controlled substance misconduct (possession of cocaine with intent to deliver) and second-degree weapons misconduct (possession of a firearm in furtherance of a felony drug offense).[1] Siedentop argues that the evidence against him was obtained illegally. The evidence was obtained in the following fashion:

On the morning of September 23, 2010, five police and probation officers approached a Fairbanks residence located at 209 Dunbar Street. The officers were trying to serve an arrest warrant on Antonio Mendez, a man who allegedly had absconded from electronic monitoring. The officers went to the Dunbar Street address because they had received information from Mendez's wife that Mendez "was associating" with a woman at that address.

The police were aware that this address was reputed to be a drug house, and they were concerned that their arrival might precipitate trouble, so two of the officers went to the back of the house while the other three officers walked up to the front door and knocked.

Siedentop was in the Dunbar Street house; he responded to the knocking by opening the front door. When Siedentop opened the door, one of the officers stuck his foot across the threshold to prevent Siedentop from closing the door again.

The officers had no specific concerns about Siedentop, and initially they only questioned him about whether he lived at the house, and whether the owner of the house was present. But the officers perceived Siedentop to be "fidgety" and "pretty nervous" in their presence — so, after less than a minute of conversation, one of the officers asked Siedentop if he had any weapons on him. Siedentop responded by pointing to his waist and declaring that he was carrying two weapons.

---

[1]   AS 11.71.030(a)(1) and AS 11.61.195(a)(1), respectively.

Based on Siedentop's statement, one of the officers patted him down and discovered a hunting knife, a handgun, an extra magazine for this handgun, and approximately $2000 in cash. The officer thereupon removed Siedentop from the residence and took him to a patrol car, where the officer conducted a second search. This second search revealed bindles of powder cocaine, a rock of crack cocaine, and a digital scale. These various discoveries led to the charges against Siedentop.

The primary question in this appeal is whether the officer acted unlawfully when he stuck his foot across the threshold to prevent Siedentop from closing the front door of the residence. The answer to that question is yes.

In *Payton v. New York*, [2] the United States Supreme Court declared that "physical entry of the home is the chief evil against which the ... Fourth Amendment is directed" — and that the Fourth Amendment "draw[s] a firm line at the entrance to the house". Absent exigent circumstances, the police may not cross the threshold of a home without a warrant. [3]

And in *Steagald v. United States*, [4] the Supreme Court clarified the *Payton* rule by holding that, even when the police have an arrest warrant for a suspect, the police need a separate search warrant if they wish to enter the house of a third party to execute that arrest warrant.

---

[2]   445 U.S. 573, 585-86 & 590; 100 S.Ct. 1371, 1379-1380 & 1382; 63 L.Ed.2d 639 (1980).

[3]   *Payton*, 445 U.S. at 590, 100 S.Ct. at 1382.

[4]   451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981).

Although there is no Alaska appellate decision on point, many federal and state courts have held that an officer's act of placing a foot across the threshold of a home constitutes an entry for Fourth Amendment purposes. [5]

The State does not dispute this rule. Nor does the State seek to defend the superior court's ruling that the officer's action was justified by safety concerns.

Instead, the State suggests two other reasons why Siedentop should not be entitled to suppression of the evidence, even though the officers entered the house without permission. First, the State contends that the entry into the house was justified because the officers were attempting to serve an arrest warrant for Antonio Mendez. Alternatively, the State contends that even if the entry was not justified, the evidence against Siedentop was not the fruit of this unlawful entry. We address these two contentions in turn.

To support its contention that the officers were justified in crossing the threshold of the residence without permission, the State relies on this Court's decision in *Anderson v. State*, 145 P.3d 617 (Alaska App. 2006). Like the present case, *Anderson* involved a situation where police officers entered a house in an attempt to serve an arrest warrant. But that is where the material similarity ends.

---

[5]    *See* (in reverse chronological order) *Dalcour v. Lakewood*, 492 Fed.Appx 924, 932-33 (10th Cir. 2012); *Moore v. Bannon*, unpublished, 2011 WL 5184224, *9 (E.D. Mich. 2011); *Hogan v. City of Corpus Christi*, unpublished, 2011 WL 4436723, *6 (S.D. Tex. 2011); *Hanie v. City of Woodstock*, unpublished, 2008 WL 476123, *6-7 (N.D. Ga. 2008); *McDonald v. Foltz*, unpublished, 2007 WL 760509, *7 (W.D. Penn. 2007); *Jones v. State*, 38 A.3d 333, 351-52 (Md. 2012); *State v. Hudson*, 209 P.3d 196, 199 (Idaho App. 2009); *Bulloch v. State*, unpublished, 2005 WL 3307318, *3 (Ark. App. 2005); *State v. Maland*, 103 P.3d 430, 435 (Idaho 2004); *State v. Larson*, 668 N.W.2d 338, 343 (Wis. App. 2003); *Green v. State*, 78 S.W.3d 604, 608, 614 n. 3 (Tex. App. 2002); *State v. Johnson*, 501 N.W.2d 876, 879 (Wis. App. 1993); *State v. Lewis*, 561 A.2d 1153, 1158 (N.J. 1989).

We upheld the officers' entry in *Anderson* because we concluded (1) that the officers had probable cause to believe that the house they entered was *the residence of the person they were seeking to arrest*, and (2) that they had probable cause to believe that this person was *inside the house when they made their entry*. *Id.*, 145 P.3d at 624-26. That was not the case here.

It is true that Mendez's wife had told the officers that Mendez was "associating" with a woman who lived at the Dunbar Street residence; thus, the officers may have had reason to think that they might *find* Mendez at that location. But Mendez's wife did not assert that Mendez was *living* at the Dunbar Street residence. And the officers had no other information to support the conclusion that the Dunbar Street house was Mendez's residence. Indeed, the officers were looking for Mendez precisely because he had absconded from the place where he normally resided.

Because of this, the rule of *Steagald* applies: the police needed a separate search warrant to enter the house of a third party to try to find Mendez, even though they already had a warrant for Mendez's arrest.

Moreover, even though the officers may have had reason to believe that they might find Mendez at the Dunbar Street house, the officers did not have *probable cause* to believe that Mendez was *currently* inside the house when they arrived. The only information the officers had on this point was the information they obtained from Siedentop *after* they seized him and searched him — at which point, Siedentop told the officers that Mendez had been at the house at an earlier time, but that Mendez hadn't been at the house in a while.

For these reasons, we conclude that the officers violated the Fourth Amendment when one of them placed a foot across the threshold of the Dunbar Street house to prevent Siedentop from closing the door.

The State's second argument is that the evidence against Siedentop was not obtained through this violation of the Fourth Amendment.

Under the circumstances presented in this case, the officers' illegal crossing of the threshold had two distinct legal aspects. To the extent that this illegal entry gave the officers an augmented view of the contents of the house, it was an unlawful search. And because the officers physically obstructed the doorway to prevent Siedentop from closing the door and ending his encounter with the officers, the officers' action constituted an unlawful seizure of Siedentop's person.

*See Majaev v. State*, 223 P.3d 629, 632 (Alaska 2010): "A seizure [occurs] when [an] officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen."

With regard to the unlawful search, the State's argument appears to be correct: the evidence against Siedentop was not derived from the officers' enhanced view of the interior of the house. But the evidence against Siedentop was discovered as a result of his admission to the officers that he was armed, and that admission was the fruit of the unlawful seizure of Siedentop's person.

Essentially, the officers conducted an investigative stop of Siedentop without reasonable suspicion. During this investigative detention, the officers interrogated him, and Siedentop admitted that he was carrying weapons. This statement ultimately led to the discovery of the evidence against him — the firearm, the cocaine, and the other evidence of drug dealing.

All of this evidence was the fruit of the unlawful seizure, and the superior court should have suppressed it. *See Waring v. State*, 670 P.2d 357, 366-67 (Alaska 1983) (all evidence obtained as a direct or indirect result of an unlawful investigative detention must be suppressed unless the government can show an attenuation between the unconstitutional conduct and the incriminating evidence); *Young v. State*, 72 P.3d

1250, 1256 (Alaska App. 2003) (statements obtained as a result of an unlawful investigative detention must be suppressed).

For these reasons, we REVERSE the judgement of the superior court.