BRENNAN, J.
¶1 Jordan Bennett Micklevitz appeals a judgment of conviction for maintaining a drug trafficking place and possession of THC with intent to deliver. He also appeals the order denying his postconviction motion without a hearing.[1]
¶2 Micklevitz argues that the trial court erred when it denied his motion to suppress the evidence obtained during the protective sweep of his apartment at the time of his arrest and when it denied his motion for reconsideration. He also argues that he is entitled to an evidentiary hearing on his claim of ineffective assistance of counsel that is premised on alleged failures by counsel to challenge other aspects of the arrest and subsequent search.
¶3 We hold that the protective sweep was lawful. Police went to Micklevitz's apartment looking for him because of a domestic violence misdemeanor battery want. Upon arrival and initial contact, the police smelled marijuana and encountered resistance from Micklevitz, who was found to be armed with a loaded handgun with a round in the chamber. These articulable facts and the rational inferences therefrom made it reasonable for the officer to believe that "the area to be swept harbor[ed] an individual posing a danger to those on the arrest scene." Maryland v. Buie , 494 U.S. 325, 337 (1990). The trial court's decision on the reconsideration motion was a proper exercise of discretion, and it noted that the new motion's allegations were premised on challenges to the credibility determinations and factual findings it had already made based on police testimony at the hearing. The postconviction motion fails to allege sufficient facts to entitle Micklevitz to an evidentiary hearing on his claim of ineffective assistance of trial counsel because none of the alleged failures constitutes deficient performance. We therefore affirm.
BACKGROUND
¶4 Micklevitz was charged with three drug counts and one count of keeping a drug house, and each charge included the use of a dangerous weapon. Police were initially dispatched to Micklevitz's apartment while investigating a battery. They had his address, name, and description as the alleged perpetrator of a misdemeanor domestic violence battery. At their knock, Micklevitz opened the door to police, who recognized that he matched the description of the person they were seeking. Through the open door police smelled the strong odor of marijuana. After Micklevitz attempted to close the door on the officers and briefly resisted, he was pepper sprayed and arrested. When they searched him, police found three Suboxone strips and a loaded semiautomatic handgun in his right rear pocket with a round in the chamber. During a protective sweep of the apartment, the arresting officer, Matthew Zaworski, saw the following items in the living room and in the bedroom: a digital scale with marijuana residue on a table, several corner-cut baggies with a substance that appeared to be marijuana, pill bottles, and an open gun safe with multiple rifles, handguns, and ammunition.
¶5 Based on the evidence observed during the arrest and the protective sweep, the officers sought a search warrant, which was issued. The search pursuant to the warrant yielded multiple firearm magazines, over 19,000 unspent rounds of ammunition, twenty-one firearms, a digital scale, several cell phones, two notebooks listing drug transactions, over forty grams of marijuana, over five hundred plastic baggies, and over two hundred prescription pills.
The suppression hearing testimony.
¶6 Micklevitz moved to suppress the evidence observed during the protective sweep on the grounds that the sweep was unlawful, claiming that the protective sweep was "unnecessary and unwarranted" because police arrested him in the hallway, not inside the apartment. At the suppression hearing, Zaworski was the sole witness.
¶7 Zaworski testified that he was one of two officers dispatched to Micklevitz's address because they were investigating a domestic violence-related misdemeanor battery. In addition to his address and apartment number, police had Micklevitz's name, age, and physical description. They were in uniform. The officers entered the apartment building and went to the second floor to Micklevitz's apartment. Outside of the apartment door, Zaworski testified, he could hear a television inside and "could smell a very faint odor of marijuana from that door." The officers knocked and received no answer. As the other officer covered the peephole, Zaworski said, "maintenance."
¶8 Micklevitz opened the door. Zaworski testified that he matched the physical description of the suspect they were trying to find. Zaworski asked Micklevitz if his name was Jordan. Micklevitz answered, "Yeah, hold on."
¶9 With the door open, Zaworski testified that he could "smell that there is this odor of fresh marijuana and kind of getting wafted into the hallway[.]" A struggle ensued, with Micklevitz trying to close the door while the two officers tried to keep it open. The other officer placed his foot in front of the door to prevent it from closing. After repeatedly demanding that Micklevitz stop pushing the door closed, Zaworski used two three-second bursts of pepper spray, forcing Micklevitz back from the door. The officers then entered and handcuffed Micklevitz less than ten seconds later.
¶10 Zaworski testified that while inside the apartment putting handcuffs on Micklevitz, he saw magazines for firearms, and a box of spent shell casings on the floor.
¶11 After taking him into the hallway outside of the apartment, away from the pepper spray, the officers searched Micklevitz. They found three Suboxone strips and a loaded semiautomatic handgun in his rear pocket with a round chambered.
¶12 Zaworski was asked what he did next:
I re-enter the apartment. Due to the fact that he was armed and the resistive behavior, I didn't know if there was anybody else in there.
So I went back in the apartment just to make sure there was nobody else in there.
....
I just did a quick look for anybody at that immediate time and then we left[.]
¶13 When asked to explain what made him suspect that someone could be inside the apartment, Zaworski said, "Due to the smell of marijuana, the spent shell casings, the firearm magazines, one, safety, I didn't want, like I said earlier, I didn't want anybody if anybody is armed in there, I wanted to know about it and I didn't want to get ambushed." He further testified that drugs and weapons "go hand-in-hand" and that in his experience, people involved in drug activity are working together with others and are all armed.
¶14 As discussed further below, the trial court made detailed findings of fact and concluded that the protective sweep was lawful. It denied the motion to suppress.
The motion for reconsideration.
¶15 Shortly thereafter, Micklevitz's counsel moved to withdraw, and Micklevitz retained new counsel. New counsel moved for reconsideration of the suppression motion ruling. The trial court denied the motion for reconsideration.
The plea and conviction.
¶16 Micklevitz resolved the case with a plea agreement. He pled guilty and was convicted of keeping a drug house and possession with intent to deliver THC, 200 grams or less, each with the use of a dangerous weapon. The remaining charges in this case and two charges in a separate case were dismissed and read in.
Postconviction motion and appeal.
¶17 Micklevitz moved for postconviction relief on the grounds that the trial court erred in its ruling on the suppression motion and in denying his motion for reconsideration. He also alleged ineffective assistance of counsel. His postconviction motion was denied without a hearing. This appeal follows.
DISCUSSION
I. The protective sweep was lawful.
¶18 When we review the denial of a suppression motion, we uphold the trial court's findings of historical fact unless they are clearly erroneous. State v. Sykes , 2005 WI 48, ¶12, 279 Wis. 2d 742, 695 N.W.2d 277. We then independently review the trial court's application of constitutional principles to those facts. Id.
¶19 Unreasonable searches and seizures are prohibited by the Fourth Amendment to the United States Constitution and article I, section 11 of the Wisconsin Constitution. State v. Horngren , 2000 WI App 177, ¶8, 238 Wis. 2d 347, 617 N.W.2d 508. Warrantless searches and seizures are per se unreasonable, subject to certain exceptions. State v. Stout , 2002 WI App 41, ¶10, 250 Wis. 2d 768, 641 N.W.2d 474. An exception exists when a protective sweep is justified. See State v. Blanco , 2000 WI App 119, ¶23, 237 Wis. 2d 395, 614 N.W.2d 512. A "protective sweep" is a quick and limited search of a premises incident to an arrest, conducted to protect the safety of the arresting officers and others. Id. The arresting officers may conduct a limited protective sweep of a residence if they have a reasonable belief based on specific and articulable facts that the area harbors an individual posing a danger to those on the scene. Id. The sweep must be narrowly confined to a cursory visual inspection of those places in which a person might be hiding. Id. The sweep must be limited in duration, and may last no longer than is necessary to dispel the reasonable suspicion of the danger. Id. When faced with a challenge to the lawfulness of a protective sweep, courts look at the individual facts available to police at the time the action was taken. Id. , ¶24. "[E]ach situation must be examined by the facts and circumstances confronted by the police at the time the sweep was conducted." Id. , ¶26.
¶20 Micklevitz challenges the denial of the suppression motion solely on the basis that the protective sweep was unjustified because police had no articulable reason to believe that another person was inside the apartment.
¶21 Zaworski testified that handcuffing and removing Micklevitz from the apartment took less than fifteen seconds, and that it was not possible during that time to see whether there was anyone in the apartment. After removing Micklevitz from the apartment, the officer said he "went back in the apartment just to make sure there was nobody else in there." The trial court noted the following facts: the odor of marijuana in the apartment, the resistive behavior, the visible spent bullet casings and other ammunition, the loaded handgun on Micklevitz with a bullet chambered, and the fact that the apartment layout made it impossible for the officers "to see all of the rooms in the apartment when they were there the first time." Zaworski said he was concerned about being ambushed and having an unknown person destroy evidence. The trial court concluded that "the officer was reasonable in thinking that someone else could be in the apartment, and that if someone else was in the apartment, under all of these circumstances, they may be armed and posing a danger to himself and his partner[.]"
¶22 Micklevitz does not challenge the findings of fact. Rather, he argues that the facts cited by the trial court "did not make it reasonable" for officers to believe that the apartment harbored an individual who posed a danger to them. He argues that (1) "[n]othing about the odor of fresh marijuana creates a 'rational inference' that officers needed to sweep the apartment to protect the officers," (2) "nothing about Micklevitz's resistive behavior[ ] made it more likely that other individuals posing a danger to police were inside [the] apartment," and (3) neither the spent bullet casings nor the fact that Micklevitz was armed with a loaded gun created a reasonable suspicion of danger. Micklevitz suggests that none of these facts necessarily creates a dangerous situation. Micklevitz cites two unpublished cases as support for the proposition that neither the odor of marijuana nor the observation of a gun is sufficient to trigger a protective sweep. See State v. Schwartz , No. 2013AP1868, unpublished slip op. (WI App July 30, 2014) (merely seeing a gun on a table insufficient to support a protective sweep) and State v. Phillips , No. 2015AP927, unpublished slip op. (WI App June 14, 2016) (discussing protective sweep but applying exigent circumstances analysis in case where odor of marijuana was the only basis for warrantless entry).
¶23 Micklevitz's application of the law to the facts contains two flaws. First, it fails to recognize that a protective sweep analysis requires a court to "examine all the facts and circumstances confronted by the police at the time," not to view each fact in isolation. See Blanco , 237 Wis. 2d 395, ¶26. Second, it fails to recognize that the mere possibility of an innocent explanation does not negate a reasonable inference that supports reasonable suspicion. See State v. Nieves , 2007 WI App 189, ¶14, 304 Wis. 2d 182, 738 N.W.2d 125. The limited protective sweep was based on articulable facts and rational inferences from which the officers could reasonably have suspected that along with the drugs and guns, armed people were still in the apartment.
II. The denial of Micklevitz's motion for reconsideration was a proper exercise of the trial court's discretion.
¶24 The second issue raised in the postconviction motion relates to the trial court's denial of trial counsel's motion for reconsideration. The motion asked the court "to reconsider its previous ruling on the Defendant's Motion to Suppress Fruits of Search of Premises." The motion asserted that the court should grant reconsideration for three reasons: (1) the officers illegally entered the apartment building, (2) the officers illegally entered the apartment and arrested Micklevitz without a warrant; and (3) it was "unlikely they actually smelled marijuana from the hallway" despite the fact that the officer so testified at the suppression hearing.
¶25 The trial court denied the motion for reconsideration, citing the testimony of the officers, its findings, and its credibility determinations. The trial court stated that it had no reason to doubt the effectiveness of prior defense counsel's performance and that it would not revisit its findings of fact and credibility determinations.
¶26 We review a trial court's denial of a motion for reconsideration to determine if the court properly exercised its discretion. State v. White , 2008 WI App 96, ¶9, 312 Wis. 2d 799, 806, 754 N.W.2d 214. A court properly exercises its discretion if it makes a "reasoned and reasonable determination" that is "based upon the facts appearing in the record and in reliance on the appropriate and applicable law." Hartung v. Hartung , 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981).
¶27 Micklevitz argues that "[i]n the 'interests of equity and justice' the Court should have allowed further testimony addressing the numerous errors surrounding the search of Micklevitz's apartment," but he does not address the applicable standard of review. Micklevitz does not assert that the court failed to base its decision on the facts appearing in the record. Nor does he assert that the denial of the reconsideration motion violated "appropriate and applicable law." See id. Applying the correct standard of review for a discretionary ruling, we conclude that the trial court made a "reasoned and reasonable determination" based on the law and the facts of record when it explained that the findings of fact and determinations of credibility would not be revisited further. Therefore, it properly exercised its discretion when it denied the reconsideration motion.
III. The postconviction motion did not allege sufficient facts to warrant an evidentiary hearing on the issue of ineffective assistance of counsel.
¶28 A postconviction motion claiming ineffective assistance of counsel must show both that counsel's performance was deficient and that the defendant was prejudiced by the deficient performance. Strickland v. Washington , 466 U.S. 668, 687 (1984).
¶29 "Whether a defendant's postconviction motion alleges sufficient facts to entitle the defendant to a hearing for the relief requested is a mixed standard of review." State v. Allen , 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. "First, we determine whether the motion on its face alleges sufficient material facts that, if true, would entitle the defendant to relief. This is a question of law that we review de novo ." Id. "If the motion raises such facts, the circuit court must hold an evidentiary hearing." Id. "However, if the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the circuit court has the discretion to grant or deny a hearing." Id.
¶30 A reviewing court addresses only the allegations contained in the four corners of a postconviction motion and not any additional allegations that are contained in an appellant's brief. See id. , ¶27.
¶31 Micklevitz bases his claim of ineffective assistance of counsel on trial counsel's failure to argue that the police (1) illegally entered the apartment building's outer door, (2) illegally entered Micklevitz's apartment door, and (3) illegally re-entered the apartment after the protective sweep for the purpose of taking photographs. His claim fails because each of the challenges is without merit and therefore the failure to bring them cannot constitute deficient performance. See State v. Swinson , 2003 WI App 45, ¶59, 261 Wis. 2d 633, 660 N.W.2d 12 ("Trial counsel's failure to bring a meritless motion does not constitute deficient performance.").
Police entry to the apartment building.
¶32 Micklevitz first argues that trial counsel performed deficiently by failing to challenge police entry into the outer apartment door. He cites generally to the "concept" in the concurrence and the dissent in State v. Dumstrey , 2016 WI 3, 366 Wis. 2d 64, 873 N.W.2d 502, for the proposition that police entry into the building was unlawful. Although he does not state it explicitly, he implies he had a Fourth Amendment right to not have the officers enter the apartment building without a warrant or his consent, and he argues that the officers' presence in the hallway outside his apartment door was a Fourth Amendment curtilage violation. He argues that "[o]fficers were not granted access to this hallway by legal means" and that "therefore, officers were unlawfully in the curtilage of Micklevitz's home when they first allegedly smelled fresh marijuana."
¶33 Micklevitz's argument is unsupported by fact and law. First, as he concedes, the record does not contain evidence of how police entered the building. His argument that officers were not granted lawful access to the building is based solely on his own affidavit stating that a key is required to enter the common area unless a tenant buzzes a guest into the building and stating that he did not grant the officers access to the building on the day of the arrest. Second, to the extent that his analysis relies on a view of the entire apartment building as the curtilage of his front door, it is foreclosed by Dumstrey , a curtilage case in which our supreme court's holding was premised on the distinction between an apartment home and the building surrounding it. See id. , ¶35 (defendant's "home cannot reasonably be said to constitute the entire apartment building[.]"). Third, he fails to apply the relevant four-factor Dunn curtilage test[2] or the six-factor legitimate expectation of privacy test that govern the analysis of whether the apartment hallway is subject to Fourth Amendment protection. See Dumstrey , 366 Wis. 2d 64, ¶¶32, 47. We do not develop parties' arguments for them. State v. Gulrud , 140 Wis. 2d 721, 730, 412 N.W.2d 139 (Ct. App. 1987). Fourth, he fails to recognize that the United States Supreme Court has held that temporary presence on the curtilage of a person's home for the purpose of knocking on the door does not constitute a violation of the Fourth Amendment:
When law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do. And whether the person who knocks on the door and requests the opportunity to speak is a police officer or a private citizen, the occupant has no obligation to open the door or to speak. When the police knock on a door but the occupants choose not to respond or to speak, "the investigation will have reached a conspicuously low point," and the occupants "will have the kind of warning that even the most elaborate security system cannot provide."
Kentucky v. King , 563 U.S. 452, 469-70 (2011) (citations omitted).
¶34 Because a challenge based on a Fourth Amendment curtilage violation would have been without merit, failure to argue it was not deficient performance.
Police entry at the door of Micklevitz's apartment.
¶35 Micklevitz argued in his postconviction motion that "[t]he moment [the officer] placed his foot inside of Micklevitz's doorway, the officer violated the Fourth Amendment" because "[o]fficers did not have a warrant to enter Micklevitz's apartment." He argued that trial counsel's decision to "attack[ ] only one part of a significantly flawed search" constituted deficient performance. We understand him to be arguing that trial counsel performed deficiently by failing to challenge the initial entry at the apartment door.
¶36 There are certain limited exceptions to the warrant requirement. As the State points out, our supreme court has directly held, in a case that is indistinguishable from this one, that "the combination of the strong odor of marijuana coming from the apartment, and the knowledge on the part of the occupants that the police are standing outside," establishes probable cause and exigent circumstances such that a warrantless entry is lawful. State v. Hughes , 2000 WI 24, ¶1, 233 Wis. 2d 280, 607 N.W.2d 621.
¶37 Micklevitz tries to distinguish his case from Hughes on the basis that Hughes also held that a finding of exigent circumstances cannot be based on "marijuana odor alone." Id. , ¶27. Micklevitz argues that this case is governed by the language of State v. Larson , 2003 WI App 150, ¶11, 266 Wis. 2d 236, 668 N.W.2d 338, which held that the officer's "step into the threshold, preventing Larson from closing the door, was an entry for Fourth Amendment purposes[.]" He ignores altogether the remainder of the Larson analysis. Having determined that the step into the threshold was an entry, this court then turned to the question of whether the State could "prove that there was probable cause to arrest and, in addition, exigent circumstances that could not brook the delay incident to obtaining a warrant." Id. , ¶15. Because the State could not, the warrantless entry was held unlawful and the resulting evidence suppressed. Id. , ¶¶16, 20, 24.
¶38 Micklevitz's reliance on Larson is misplaced because he has not developed any argument on the second part of the Larson analysis: the existence of probable cause and exigent circumstances. His postconviction motion does not address the question of probable cause and exigent circumstances for the warrantless entry into Micklevitz's apartment. Here, at the point when Micklevitz opened the door, police smelled the odor of marijuana and recognized that Micklevitz matched the description of the man they were looking for on the misdemeanor. Further, unlike Larson, Micklevitz had knowledge that police were at the door. Based on the factual findings of the trial court following the suppression hearing, there would have been no merit to challenging the entry of the apartment because under the rule set forth in Hughes , the warrantless entry was justified by probable cause and exigent circumstances.
Police presence in the apartment after the protective sweep.
¶39 Micklevitz also argued that trial counsel performed deficiently by failing to challenge the lawfulness of police presence in the apartment prior to the issuance of the search warrant. He argues that time stamps on police photos provided in discovery revealed that photos were taken inside the apartment between 7:02 p.m. and 11:15 p.m. even though the search warrant was not issued until 11:44 p.m. Micklevitz does not assert that the officers conducted any further search after the protective sweep but prior to obtaining the warrant, and there is no evidence in the record that they did. Because he does not assert that police unlawfully searched the apartment prior to obtaining the warrant, the sole question is whether police could lawfully be present in the apartment at the time they were taking photographs in the apartment. La Fournier v. State , 91 Wis. 2d 61, 68-69, 280 N.W.2d 746 (1979), provides the answer. In that case, our supreme court held that where officers continue a lawful initial entry by securing the scene and documenting evidence in plain view, the subsequent entry does not require a warrant. Id. at 69-70. Here, the trial court found that the protective sweep was quick and for the purpose of determining whether others were in the apartment. The evidence that was in plain view during that sweep was lawfully observed. So long as no further search is conducted without a warrant, La Fournier authorizes police to secure the scene and document the evidence that is in plain view, and a challenge based on the fact that police photographed the scene while waiting for the search warrant would have been without merit.
¶40 Because Micklevitz has not alleged sufficient facts that if true would entitle him to relief, he is not entitled to a hearing on his motion.
¶41 The trial court properly exercised its discretion when it denied Micklevitz's reconsideration motion. The trial court properly held that the protective sweep was justified. The postconviction court properly denied Micklevitz's postconviction motion without a hearing because he failed to allege facts concerning trial counsel's performance that if true would warrant relief. We therefore affirm the judgment and order.
By the Court. -Judgment and order affirmed.
Not recommended for publication in the official reports.

The Honorable Carolina Stark entered the judgment of conviction, and the Honorable Frederick C. Rosa entered the order denying postconviction relief.

See United States v. Dunn , 480 U.S. 294 (1987).